## SHANNON v. SHAFFER OIL & REFINING CO. et al.
### No. 292.

Circuit Court of Appeals, Tenth Circuit.
July 13, 1931.

J. M. Springer, of Tulsa, Okl., and C. G. Horner, of Guthrie, Okl., for appellant.

Streeter B. Flynn, of Oklahoma City, Okl. (Frank G. Anderson, of Oklahoma City, Okl., G. Earl Shaffer, of Tulsa, Okl., and R. M. Rainey and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The plaintiff (appellant) owned an eighty-acre tract of land in Oklahoma, upon which defendants held an oil and gas lease. Four wells were drilled thereon in 1925 and 1926 in an effort to produce oil. The land was underlain, in part at least, with two oil and gas bearing sands, the upper being known as the "Bartlesville" and the lower as the "Wilcox." The Wilcox sand was supposedly the more valuable, and the wells were drilled through the Bartlesville sand to get to the Wilcox. This action is for damages for the value of gas which plaintiff alleges the defendants permitted to escape and waste. The jury returned a verdict for the defendants.

The lease is in ordinary form, granting the lessee the right to use gas produced for its operations, and the lessee agreeing to pay to the lessor or his assigns one-eighth of the net proceeds of any gas produced and used off the premises. Chapter 197, Session Laws of Oklahoma of 1915, prohibits waste; waste is defined to include "escape of natural gas * * * into the open air"; and it is further provided that, when a gas sand is encountered, the gas shall be confined therein until it is utilized. Violations of the act are punishable by fine and imprisonment. The Corporation Commission enacted certain regulations designed to carry out these statutory mandates.

In view of the narrow scope of the errors properly preserved for review, no extended analysis of the evidence is necessary. The plaintiff testified he was about the wells frequently, but knew little of the business; he saw gas escaping into the air, but he did not know how much gas was produced as he "had a man hired to gauge those wells." He knew large quantities of gas were saved and sold, for which he received his royalties; he testified that "they might have attempted to shut in the gas by the mudding off or lubricating process but that they did not stop it." There was a gas pipe line into the field, and the pressure of the wells was sufficient to overcome the pipe line pressure; there was no evidence of the amount of gas from this lease which the pipe line was in position to handle. A gauger testified he had gauged the gas pressure on this lease, and that the company kept a record of the gauges so made. The defendants produced the record of such gauges and tendered them to the plaintiff, who declined to use them. The gauger did testify to the pressure on certain dates, which would show what the well was capable of producing. He testified that the gas from the Bartlesville sand was bradenheaded and allowed to flow into the slush pond; that, if oil and gas are coming from the same stratum, you cannot take the oil and save the gas; that defendants ran iron oxide and mud and slush into one well to stop the gas. Other witnesses testified that gas escaped, and no effort was made to stop it. There was also evidence, introduced by plaintiff, of tests of one of the wells for its open flow on various dates; that "On this well No. 1 we [the defendants] held the back pressure on the well putting a flow plug in the well to hold this back pressure and conserve this gas and let it flow enough to produce its production and held the maximum pressure on the well. The gas escaped from the lead line to the well through what is known as the separator, and the oil stripped from the gas. The remainder of the gas being sold as much as we could possibly sell."

When the plaintiff rested, defendants' motion for a directed verdict was denied; thereupon defendants rested; the plaintiff did not ask that the court instruct the jury that the plaintiff was entitled to recover in such amount as the jury might determine. In Gasoline Products Co. v. Champlin Refining Company, 283 U. S. 494, 51 S. Ct. 513, 75 L. Ed. 1188, it was held that all the issues in a case need not be submitted to a jury, because one must be. Thereupon the court submitted the case to the jury, charging them, in substance, that, if they found that defendants had failed to use diligence in performing the obligations imposed upon them by law and by their lease, the plaintiff should recover; but that neither the law nor the lease required defendants to do the impossible, nor deprived them of the right to drill to the sand which in their judgment justified the drilling operations; that if the defendants, in endeavoring to conserve the gas, used those means recognized as proper in modern oil and gas development, and exercised their best judgment as to the method of conserving said gas, they would not be liable if, nevertheless, some gas escaped.

Many errors are assigned, among them that the "court erred in excluding testimony offered by said plaintiff." This presents nothing for review. Rule 11 of this court provides: "When the error alleged is to the admission or rejection of evidence the assignment thereon shall quote the full substance of the evidence admitted or rejected."

At the conclusion of the charge the plaintiff excepted to this instruction: "You are further instructed that in open court the

defendant tendered the plaintiff all records relative to said wells, and if the plaintiff failed to avail himself of such records and such information as he could have produced from the records of the defendant, and you further find that from the evidence introduced you are not able to arrive at an intelligent and logical conclusion, then your verdict must be for the defendant."

The exception is without merit. The substance of the instruction is that, if there is not sufficient evidence to enable the jury to arrive at an intelligent conclusion, the plaintiff must fail. The objection stressed is not so much to this elementary statement, but to the reference to the records. The reference to the record was not uncalled for. The records were in court. The plaintiff was not required to use them; but if, without them, his evidence was so sketchy that there was no reasonable basis for estimating his loss, he could not recover. The national courts are not foreclosed from any mention of evidence or lack of evidence, or incidents of the trial.

The plaintiff further excepted to the following instruction: "You are further instructed that the drilling of oil and gas wells is a hazardous enterprise; that there is much risk and chance involved; that there is danger of losing the hole and tools, and the defendant would have the right as a driller to go to the sand which in its judgment would justify the drilling operation which it had undertaken, and if gas escaped at a higher sand, the flow of which could not be stopped and it could not complete the drilling of the well without permitting the gas to escape, then the defendant would not be chargeable for the gas so wasted."

Considering this instruction with the rest of the charge, we see no objection to it. The statutes and the regulations of the Corporation Commission are not intended to stop exploration for oil, nor to require the abandonment of producing oil wells; neither do they require the operator to pay for gas that unavoidably escapes. The statutes and regulations are designed to stop the reckless waste of a natural resource formerly incident to oil production, and to require operators to take every reasonable precaution known to the industry to prevent a wastage of gas when drilling for oil. They do not require the impossible. The charge of the court, considered in its entirety, is in accord with these views.

The plaintiff filed a motion for a new trial, which was denied. The first seven points are general—that the court erred in excluding testimony, and in its instructions to the jury; that errors of law occurred at the trial; and that the verdict and judgment are contrary to the law and evidence. The next twelve points are detailed exceptions to the charge. Much of the brief is devoted to points raised, for the first time, by the motion for new trial.

The whole plan of jury trials in the national courts would be thwarted if points could be reviewed which are first raised upon a motion for a new trial. The underlying theory of jury trials is that errors must be sharply called to the attention of the court while the trial is in progress, so that the trial court may have the opportunity to correct the error, and save the necessity of a new trial. The burden is squarely placed on counsel of detecting errors promptly, pointing them out, and excepting to the rulings made. Errors in the admission or exclusion of evidence, errors in submitting a case to the jury on insufficient evidence, errors in the charge to the jury, and all errors occurring at the trial, fall within the scope of this rule. And yet the major part of the motion for a new trial in this case flies fairly in the face of these settled principles and also of Rule 10 of this court, which reads: "The party excepting to the charge of the court to the jury in trials at common law must state distinctly the several matters of law in such charge to which he excepts before the jury retires; and no other exceptions, nor general exceptions, to the charge shall be allowed by the district courts or inserted in a bill of exceptions."

This has been the law since a very early day. In Pennsylvania R. R. Co. v. Minds, 250 U. S. 368, 375, 39 S. Ct. 531, 533, 63 L. Ed. 1039, the court said: "This court has repeatedly held that objections to the charge of a trial judge must be specifically made in order that he may be given an opportunity to correct errors and omissions himself before the same are made the basis of error proceedings; this is the only course fair to the court and the parties. McDermott v. Severe, 202 U. S. 600, 610, 26 S. Ct. 709, 50 L. Ed. 1162; Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 120, 33 S. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; United States v. U. S. Fidelity Co., 236 U. S. 512, 529, 35 S. Ct. 298, 59 L. Ed. 696; Jacobs v. Southern Ry. Co., 241 U. S. 229, 236, 36 S. Ct. 588, 60 L. Ed. 970; Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 338, 39 S. Ct. 102, 63 L. Ed. 275. Parties may not rest content with the procedure of a trial, saving general exceptions to be made the basis of error proceedings, when they might have had

all they were entitled to by the action of the trial court had its attention been seasonably called to the matter."

There are instances, particularly in criminal cases, where the error is so fundamental and glaring that it may be noticed by the appellate court in the absence of exception. N. Y. Central R. R. Co. v. Johnson, 279 U. S. 310, 318, 49 S. Ct. 300, 73 L. Ed. 706; Bogileno v. United States (C. C. A. 10) 38 F.(2d) 584. But this is not one of those unusual cases. The exceptions to the charge contained in the motion for new trial cannot therefore be noticed. Lewis v. United States, 146 U. S. 370, 379, 13 S. Ct. 136, 36 L. Ed. 1011; Reagan v. Aiken, 138 U. S. 109, 113, 11 S. Ct. 283, 34 L. Ed. 892.

One of the grounds for the motion for new trial is that the verdict is contrary to the evidence. An order overruling a motion for a new trial is not an appealable order (Luckenbach S. S. Co. v. United States, 272 U. S. 533, 540, 47 S. Ct. 186, 71 L. Ed. 394; Reagan v. Aiken, 138 U. S. 109, 113, 11 S. Ct. 283, 34 L. Ed. 892; Railway Company v. Heck, 102 U. S. 120, 26 L. Ed. 58; Kansas City Southern Ry. v. Littlefield (C. C. A. 10) 37 F. (2d) 707), although time does not run on the right to appeal from the judgment until the motion is ruled on (United States v. Ellicott, 223 U. S. 524, 539, 32 S. Ct. 334, 56 L. Ed. 535; Luckenbach S. S. Co. v. United States, 272 U. S. 533, 540, 47 S. Ct. 186, 71 L. Ed. 394). When the appeal is from the judgment, error cannot ordinarily be assigned on the denial of a motion for a new trial; such motion is addressed to the discretion of the trial court, and his action thereon is not reviewable on appeal unless there has been a clear abuse of discretion. Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C. A. 10) 49 F.(2d) 146, 150; Bowman-Hicks Lumber Co. v. Robinson (C. C. A. 9) 16 F.(2d) 240; Glenwood Irr. Co. v. Vallery (C. C. A. 8) 248 F. 483; Pugh v. Bluff City Excursion Company (C. C. A. 6) 177 F. 399.

In the last two cases cited, the verdict in one was for nominal damages for the wrongful death of a wage-earner in sound health, and the sole support of the plaintiff; in the other, the verdict deducted an amount in express disregard of the court's instructions. From these two authorities, with which we are in accord, the plaintiff argues that some gas escaped; therefore he was entitled to some damages.

We recognize the rule contended for by plaintiff that, where there is proof, within the permissible range of certainty, that a right of a plaintiff has been invaded, he should not be denied a substantial recovery because of the difficulty in accurately measuring his damages. The later authorities recognize the distinction between the case where uncertainty exists as to whether any substantial damage resulted, and the case where the uncertainty exists only as to the extent of such damage. In Hoffer Oil Corp. v. Carpenter, 34 F.(2d) 589, 592, we held that one who had broken his contract could not escape liability because of the lack of a perfect measure of damage. The Eighth Circuit had theretofore so held. Calkins v. Woolworth, 27 F.(2d) 314, 320. Williston, in his Work on Contracts, says: "Where it is clear that substantial damage has been suffered the impossibility of proving its precise limits is no reason for denying substantial damages altogether." Williston on Contracts, Vol. III, p. 2401.

In 8 R. C. L. p. 441, the author states: "Formerly the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty referred to is uncertainty as to the fact of the damage and not as to its amount, and that, where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This is particularly true where, from the nature of the case, the extent of the injury and the amount of damage is not capable of exact and accurate proof."

The Fifth Circuit, in Wells v. National Life Ass'n, 99 F. 222, 53 L. R. A. 33, cites many authorities to the same effect, including Wakeman v. Manufacturing Co., 101 N. Y. 205, 4 N. E. 264, 266, 54 Am. Rep. 676, wherein it is held: "But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain."

The Second Circuit, in Crichfield v. Julia, 147 F. 65, 71, certiorari denied 203 U. S. 593, 27 S. Ct. 781, 51 L. Ed. 332, stated the rule: "The rule against the recovery of uncertain damages has been generally directed against uncertainty as to cause rather than uncertainty as to measure or extent; that is, if it is uncertain whether the defendant's act caused any damage, or whether the damage proved flowed from the defendant's act, there

may be no recovery of such uncertain damages; whereas uncertainty which affects merely the measure or extent of the injury suffered does not bar a recovery."

The same circuit, in Straus v. Victor Talking Mach. Co., 297 F. 791, 802, held: "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery." See, also, Pierce v. Tenn. Coal, etc., R. R. Co., 173 U. S. 1, 16, 19 S. Ct. 335, 43 L. Ed. 591; Hetzel v. B. & O. R. R. Co., 169 U. S. 26, 38, 18 S. Ct. 255, 42 L. Ed. 648.

But this rule does not mean there need be no proof of the amount of the damage. Obviously a plaintiff may not come into court and say no more than "the defendant stole some wheat" or that "a fire destroyed some of my goods," and ask for substantial damages. The rule is that, if an injured plaintiff has produced the best evidence available, and if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the exact amount of the damage is incapable of ascertainment. In Eastman Co. v. Southern Photo Co., 273 U. S. 359, at page 379, 47 S. Ct. 400, 405, 71 L. Ed. 684, the court held: " 'Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible."

In Anvil Min. Co. v. Humble, 153 U. S. 540, 14 S. Ct. 876, 38 L. Ed. 814, the Supreme Court held that mathematical certainty as to damage was not necessary, if the evidence "furnished a basis upon which a reasonable estimate" of the elements entering into the damage might be made. In the Hoffer Case, supra, we held that "a reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss, is sufficient."

The plaintiff's entire argument, on this point, is that, because some gas escaped, he necessarily was entitled to his proportion of the value of all the gas the wells were capable of producing, less what he had been paid for. There are two flaws in this reasoning. In the first place, the burden was on plaintiff to show that defendants failed to exercise proper diligence, under their lease and the laws of Oklahoma, to prevent waste. The plaintiff's witnesses testified that some effort was made to shut off the gas by a flow plug, with mud, by a bradenhead, and with oxide of iron, although these efforts were successful only in part. One of his witnesses testified broadly that "the remainder of the gas being sold as much as we could." Furthermore, it should not be assumed that defendants, owning seven-eighths of the gas, would have wasted it, if by reasonable diligence it could have been conserved. But, even if it be assumed that the evidence of defendants' lack of diligence was undisputed, there is still the question of whether plaintiff afforded the jury any reasonable basis for computing his loss. The record discloses open-flow pressures at given dates, which indicate the capacity of the well if it flows continuously and without hindrance; but when the same record discloses that flow plugs, mud, oxide, and other means were used to obstruct and control the flow; when the record discloses some unavoidable wastage; and when their lease gave defendants the right to use gas for the operations being carried on—when these factors are considered, there is no substantial basis left from which a jury could make a rational estimate of the amount of avoidable waste. Certainly the plaintiff's theory that he is entitled to pay upon the basis of the capacity of the wells is unfair. The members of this court have studied this record carefully and are unable to arrive at any rational estimate of the amount of gas, if any, which was wasted through the fault of defendants. We conclude that the trial court did not abuse its discretion in declining to grant a new trial because the jury did not find evidence upon which to return an intelligent verdict.

The judgment is therefore affirmed.