### WARD et al. v. FLEX–O–TUBE CO. et al.
### Civ. A. 10289.

United States District Court
E. D. Michigan, S. D.
June 10, 1953.

Carroll C. Grigsby and Smith & Huff-aker, Detroit, Mich., for plaintiffs.

Alfred E. Lindbloom and Beaumont, Smith & Harris, Detroit, Mich. (Dall-stream, Schiff, Stern & Hardin, Chicago, Ill., of counsel), for defendants.

LEVIN, District Judge.

The plaintiffs are citizens of Michigan. Both defendants are foreign corporations. For some years the plaintiffs each owned half of the outstanding shares of the capital stock of the defendant Harturn, Inc., then known under another name. Early in 1945 the plaintiffs granted an option to a third party to purchase their stock, which option was exercised, and the interest thus acquired was, on September 15, 1945, assigned by such third party to the defendant Flex-O-Tube Company, then also known under another name.

On September 15, 1943, the defendant Harturn, Inc. filed claims for refund under Section 722 of the Internal Revenue Code, 26 U.S.C.A. § 722, relating to excess profits tax relief by adjustment of the excess profits credit; such claims were enlarged from time to time to cover taxable years not included in the original claims. As a part of the purchase price for their shares of stock on the exercise of the option, the plaintiffs were to have the benefits of any recoveries which might be obtained under the Section 722 claims which were in face amounts in excess of $92,000.

After the stock purchase, the persons originally representing Harturn, Inc. in connection with the Section 722 claims, with the permission of the defendants, represented the plaintiffs' interests in the various departmental conferences and hearings in connection with the claims.

After denial of the claims by the Internal Revenue Agent in Charge, a number of conferences were held with the Technical Staff in Detroit during which the Government made an offer of settlement in a nominal amount, not disclosed to the Court, which the plaintiffs declined. The claims were again denied and an appeal was taken to the Excess Profits Tax Council in Washington, D. C.

In the meantime, the defendants had been engaged in a renegotiation proceeding under the Renegotiation Act of 1943, as amended, 50 U.S.C.A. Appendix, § 1191, covering the fiscal year ended April 30, 1945. The War Contracts Price Adjustment Board determined that the amount of excessive profits to be eliminated was the sum of $400,000 before credit for tax adjustments. After credit for tax adjustments, which resulted from such renegotiated reduction in income, the net renegotiation refund owing to the Government was computed at $97,216, not including certain amounts for interest.

On December 5, 1949, the defendants and the Government settled the payment of the aforesaid liability for the renegotiation refund by entering into a written agreement, which provided for the payment of $6,000 in cash by the defendants to the Government and released to the Government certain claims of the defendants. The agreement further provided that in the event a net refund of taxes should be allowed on

account of the claims under Section 722, the Government would have the right to setoff the amount of such refund against the then unpaid balance of the Government's aforesaid renegotiation claim.

■ The transfer to the plaintiffs of the benefits if any, available under the unliquidated Section 722 claims was nonassignable as against the United States, Section 203, 31 U.S.C.A. The written settlement agreement between the Government and the defendants simply provided for the retention by the Government of the rights of setoff which it already had by statute, Sec. 227, 31 U.S.C.A.

■ The plaintiffs urge that the court attach some value to the claims against the Government so as to enable them to recover in this action particularly since the plaintiffs had rights of further appeal on the Section 722 claims at the time of the settlement agreement between the Government and the defendants. There may well have been some value to these claims but the plaintiffs have not offered any proof thereof. Furthermore, there is no evidence as to the value, if any, which the representatives of the Government placed upon these claims, and there is no proof of any benefits accruing to the defendants because of these claims. It is true that there may not be escape from liability for damages because of difficulty in making proof of the amount thereof, De Vries v. Meyering Land Co., 248 Mich. 128, 226 N.W. 824, but this is not to say that there is no requirement on the part of the plaintiffs to show some reasonable basis for the computation of such damages. Shannon v. Shaffer Oil & Refining Co., 10 Cir., 51 F.2d 878, 882, 78 A.L.R. 851. See also Curtis v. Hartford Accident & Indemnity Co., 335 Mich. 416, 56 N.W.2d 240. There is no proof here of any damages.

Moreover, even if there were proof of a benefit to the defendants, that in itself would not necessarily be sufficient to establish liability to the plaintiffs for it has been said that there must also be a showing that the transaction which took place (between the Government and the defendants) was at the expense of the plaintiffs, Hicks

v. Cary, 332 Mich. 606, 52 N.W.2d 351, and there is no such showing here.

Judgment may be entered for the defendants.