LONE STAR GAS COMPANY, Appellant,

v.

W. A. THOMAS, Appellee.

No. 16191.

Court of Civil Appeals of Texas.

Fort Worth.

April 7, 1961.

Rehearing Denied May 5, 1961.

 

Warren J. Collins, Eugene D. Wilson, and Thomas M. Gromley, Dallas, for appellant.

Ben Hagman, Weatherford, for appellee.

BOYD, Justice.

W. A. Thomas sued Lone Star Gas Company for damages to his dairy cattle alleged to have been caused by their consumption of water containing sodium carbonate and sodium bicarbonate, which water had drained from Lone Star's premises and cracking plant onto plaintiff's premises, it being alleged that such chemicals poisoned and otherwise injured the cattle by interfering with their digestion of food and especially with digestion in the rumen, and causing the cattle to fail to reproduce, causing them to become unhealthy and indolent, to lose weight, and to decrease their milk production. There was a verdict for Thomas for $9,150, and judgment was rendered for that sum. Lone Star appeals.

Issues Nos. 5, 6, and 7, with the answers, were as follows:

"No. 5: Do you find from the preponderance of the evidence that the drinking of the water in question by the cattle in question, if you have so found that they did so drink such water, interfered with the digestion in the rumen of such cattle? Answer: It did.

"No. 6: Do you find from a preponderance of the evidence that such interference with digestion in the rumen of such cattle, if you have so found it did interfere, cause any damage to the cattle in question? Answer: It did.

"No. 7: What do you find to be the difference, if any, stated in dollars and cents, if any, between the fair market value of the cattle in question on December 14, 1958, and on March 11, 1959, due to the interference of digestion in the rumen of such cattle caused by, and only by, the sodium carbonate content and the sodium bi-carbonate content, if any, contained in water drunk by said cattle, coming from the Springtown Gasoline Plant of defend-

ant Lone Star Gas Company, if any interference with the digestion in the rumen of said cattle you have so found? Answer: $9,150."

By points of error appellant challenges the findings that the consumption of the water in question by the cattle caused the injuries complained of, its contention being that there was no competent evidence to support the finding, and that the finding was against the great weight and preponderance of the evidence; it challenges the action of the court in submitting such issue, and in submitting No. 6, because the issue does not limit the findings of interference with digestion to such as might have been caused by sodium carbonate and sodium bicarbonate, and because No. 6 inquired about the effect on the cattle as a group rather than on individual cows; in refusing to strike the testimony of Dr. Maddox, a veterinarian, and particularly his testimony that he thought the consumption of sodium carbonate and sodium bicarbonate would interfere with the rumination of cattle, on the ground that the witness was not shown to be qualified as an expert; in admitting the testimony of appellee, Riddle, and Harms, relating to sickness of cattle said to have drunk water from the same source as appellee's cattle, on the ground that there was no competent evidence that sodium carbonate or sodium bicarbonate could interfere with digestion in the rumen, and because said testimony was not limited to damage caused solely by interference with digestion in the rumen caused by sodium carbonate and sodium bicarbonate in the water; and in admitting testimony and submitting issues as to damage to the herd rather than damage to individual cows.

Chemical analyses of some samples of the water in question showed the sodium carbonate content to be from 121.1 to 455.7 milligrams per liter, and showed the sodium bicarbonate content to be from 720.9 to 969.3 milligrams per liter. Several chemists testified that milligrams per liter substantially equaled parts per million.

Dr. Maddox testified that he had been a practicing veterinarian in Wise County and adjoining counties since 1945, and that 90 per cent of his practice was with dairy cattle; he had done appellee's veterinary work for four years, and saw appellee's cattle quite often; in February or March of 1959 he noticed that appellee's cows were not in their usual good condition; sodium carbonate and sodium bicarbonate were alkaline, and in his opinion when a cow was fed these substances it would definitely make a change in the pH reaction of the rumen and would definitely hinder the ability of the bacteria to remain and function; as a result, the cow would have indigestion, lose weight, lose in milk production, and would be a very sick cow; normal rumen pH is from 6 to 7.8 on the pH scale; he had not conducted any experiments or tests on cattle to ascertain the effect on rumination of the ingestion of sodium carbonate or sodium bicarbonate, and only knew about that from what he had read in the books; he could not say how much sodium bicarbonate it would require to affect the pH factor except as expressed in parts per million in water; 400 parts per million would change the pH factor. In answer to a hypothetical question that if two cows which had been given sodium bicarbonate in water for a period of 24 days scoured, stood around, left feed in the trough, lost an average of 25 per cent milk production, and lost weight, and if two other cows which were not given sodium bicarbonate, but which had access to the same amount of feed and grazing, remained in good, healthy condition, what, in his opinion, caused the condition of the two cows first mentioned, Dr. Maddox said, "I would say very definitely that it was because of the sodium bicarbonate in the water * * *"

We do not think it was error to refuse to strike Dr. Maddox's testimony. An expert may testify from knowledge gained from study, without practical experience in the particular field. The general

rule is that whether a witness is qualified as an expert is left to the discretion of the trial court. Texas & N. O. R. Co. v. Pettit, Tex. Civ.App., 290 S.W.2d 730; Wilderspin v. Bewley Mills, Inc., Tex.Civ.App., 298 S.W. 2d 636; Associated Ind. Corp. v. Baker, Tex.Civ.App., 76 S.W.2d 153.

Dr. Carroll, another veterinarian who did not testify, assisted by others, conducted a test on Riddle's farm by selecting four dairy cows from a herd, two being confined to a lane from 30 to 40 feet wide and from $\frac{1}{4}$ to $\frac{1}{2}$ mile long, and were given water with sodium bicarbonate in it, and the other two being confined to a lane of similar width and length, which were not given water with sodium bicarbonate in it. Before their separation from the herd the four cows were tested for average milk production. During the test period the four cows grazed in the lanes, and the supplemental feed given them was measured and a record kept of the amount of feed consumed and the amount left in the trough by each cow.

The records of these tests showed that the cows which drank the water with sodium bicarbonate in it did not consume as much supplemental feed during the tests as they did during the three-day base period before they were separated from the herd, and there was some falling off in milk production.

■ In our opinion no error is shown in the admission of the testimony of lay witnesses that cows which had drunk water from the same source as appellee's cows became sick, over the objection that such testimony was not limited to damage resulting solely from interference with digestion in the rumen caused by sodium carbonate and sodium bicarbonate in the water, and that there was no competent evidence that such chemicals could interfere with such digestion. We think the objection went to the weight of the evidence rather than to its admissibility.

■ In this and other points appellant elaborates its contention that appellee based his case entirely on damage caused by the chemicals by interference with digestion in the rumen. We do not so understand appellee's pleading. We quote from the petition:

"The continued consumption of said water containing the two elements above described constitutes poison for cattle and also, as a result thereof, the same interferes with the digestion of food and especially interferes with functions of the rumen in cattle.

"That following the consumption of said water beginning about the 14th day of December 1958, the said cattle of Plaintiff appreciably slowed down the consumption of food and thereby became weak, indolent and unhealthy; that they begun to lose weight; that said cattle gradually became unfit for dairy purposes and decreased their production of milk. That some of said cattle failed to become pregnant or reproduce; and that said cattle shrank in value * * *.

"That the said water constitutes a hazard to cattle with the carbonates therein, * *.

"That by drinking the same, the Plaintiff's cattle have lost milk production, have failed to properly breed and have become sick and indolent, as herein alleged; * * * ."

■ Other points are that it was error to admit evidence as to the difference in the market value of appellee's herd of dairy cattle before and after their consumption of the water in question, and the submission of such issue, and basing appellee's recovery on the answer thereto, because appellant says that appellee sued for damages to each cow individually. Appellee alleged that consumption of the "contaminated water greatly diminished the value of his herd. That the entire dairy herd of the Plaintiff's cattle was suffering from the effects of carbonation in the water; * * *." It is true that there were allegations that each of 70 cows and thirty

heifers were damaged certain amounts which aggregated $17,340; but it was also alleged that because of the consumption of the water "Plaintiff's cattle have lost milk production, have failed to properly breed, and have become sick and indolent, * *." The prayer was for damages "for the loss of cash market value of his dairy herd in the sum of $17,340.00" and for other recoveries such as punitive damages and loss of the value of some leased land. We think the judgment conformed to the pleadings, the evidence, and the verdict.

Rule 45, Texas Rules of Civil Procedure provides that all pleadings shall be so construed as to do substantial justice. "After verdict the pleading is construed as favorably to the pleader as possible. In the language of Mr. Justice Moursund, 'The modern tendency is toward greater liberality in the construction of pleadings in order not to require the retrial of a case when justice has been done, and the parties understood what the points in issue were, and the same were submitted to a court or jury.'" 8 Tex.Jur., 10 Year Supp. p. 284, sec. 208.

■ Appellant's contentions that there is no competent evidence to show that the water in question could have caused the damages complained of, that the evidence was insufficient to support such finding, and that the finding was against the great weight and preponderance of the evidence, have had our careful consideration; but we are of the opinion that the points must be overruled. We do not set out the evidence in full, but give a summary of that which we think supports the verdict and judgment. Appellant offered expert testimony which might have supported a finding that there was not enough sodium carbonate or sodium bicarbonate in the water to cause the alleged injuries to appellee's dairy cows. The triers of the fact found against appellant upon what we believe to be sufficient evidence and so these points are accordingly overruled.

■ Appellee testified that he knew the cash market value of his dairy herd, and that on and prior to December 14, 1958, it was $31,000, and that in the spring of 1959 such value was $15,000. Harms testified that he knew appellee's herd and he thought appellee had some good dairy cows, and that a good dairy cow was worth something like $200 more than a beef cow of the same weight.

The nature of the case is such that the damages may not be susceptible of precise measurement. But in such circumstances a reversal is not always in order. In Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 250, 75 L.Ed. 544, it was said: "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." "We recognize the rule contended for by plaintiff that, where there is proof, within the permissible range of certainty, that a right of a plaintiff has been invaded, he should not be denied a substantial recovery because of the difficulty in accurately measuring his damages." Shannon v. Shaffer Oil & Refining Co., 10 Cir., 51 F.2d 878, 881, 78 A.L.R. 851. And in Straus v. Victor Talking Machine Co., 2 Cir., 297 F. 791, 802, the court said: "The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery."

We have considered all of appellant's contentions and believe that reversible error is not reflected.

The judgment is affirmed.