John A. BLAKEMAN, Appellant
(Defendant below),

v.

Rebecca Mae GOPP, a minor, by Lauren S. Gopp and Dortha Mildred Gopp, her father and mother as next friends, Appellee (Plaintiff below).

No. 3008.

Supreme Court of Wyoming.

Sept. 26, 1961.

Henderson & Godfrey and Paul B. Godfrey, Cheyenne, for appellant.

Harold Joffe, Worland, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This action involves a claim for personal injuries suffered by the plaintiff, a nine-year-old girl, when she was struck by an automobile owned and driven by the defendant, John A. Blakeman. The accident occurred just east of Tensleep, Wyoming, on U.S. Highway 16. At the time of the accident, plaintiff was riding a bicycle along the highway toward the east. The defendant, traveling in the same direction, undertook to pass her when something happened which caused her and her bicycle to be struck by defendant's automobile. The defendant claims that just as he was about to pass, the plaintiff for some unknown reason made an abrupt left-hand turn in front of him. The issues were tried, without a jury, to District Judge D. J. Harkins. From a judgment awarding damages in the sum of $11,588 to the plaintiff, the defendant has appealed.

█ *Negligence of Defendant.* With respect to the defendant's liability, he contends that there was not sufficient evidence of negligence on his part to sustain the judgment. We will deal with that question first.

The plaintiff herself was rendered unconscious by the accident and testified that she had no recollection as to how such accident happened. The defendant's version of the accident is substantially this: That he and his wife were proceeding out of Tensleep. There were two automobiles ahead at intervals of approximately 150 feet traveling in the same direction. No vehicles were coming from the opposite direction. He saw the plaintiff some 300 feet away, and she was riding in the right lane of traffic on the oil surface of the highway. The other two cars by straddling the center line of the highway passed plaintiff without incident, and defendant, traveling at about the same rate of speed and along a similar course, started to pass. He claims that just as he was about to pass, or within 25 or 30 feet of plaintiff, she suddenly turned in front of him. He immediately swerved to the left and hit his brakes, but he says the car hit her at the same time he made the swerve and that the impact took place before the effect of the brakes did.

According to the defendant, the plaintiff was thrown—not carried by the automobile—and left lying around 50 feet from where she was struck. He testified that she was lying in about the middle of the right lane of traffic. However, one of the highway patrolmen who investigated the accident testified that blood left on the highway where she had lain was not in the center of the right lane but to the right-hand side of the right lane.

The defendant fixes the point of impact with plaintiff as approximately on the center line of the highway. His wife testified that he was about straddle of the center line when the accident happened. The automobile which struck plaintiff and her bicycle had four headlights in front, horizontally placed. The inside headlight of the two on the right had been knocked out by the impact and a small dent had been made in the front part of the right-front fender. The defendant said that there were no scratches or damage done on the extreme right side of the car.

There is no evidence that the defendant sounded his horn or gave any warning of his approach or of his passing. In fact he testified that he did not sound his horn. He said that, inasmuch as the other cars had passed, he thought plaintiff was aware

of the traffic. It did not occur to him to slow down or use his brakes. As to why he had not changed his speed, he explained: "I never thought she would come over but what she would stay on the right hand side of the road." One of the patrolmen testified that the defendant told him that "two other cars had passed her, just ahead of him, and he thought it would be safe, and that she was well off the road, enough he could proceed on by her too."

Officers who investigated the accident described tracks or marks made by the bicycle on the right side of the highway and claimed there were none on the left. In particular, a place where the bicycle gouged the road was fixed as being about eighteen inches to the right of the center line. The defendant was quoted as having said, "Maybe I should have honked the horn." No skid marks from the automobile tires could be found.

In effect, counsel for the defendant contends that the defendant and his wife were the only eyewitnesses to testify with respect to the happening of the accident itself. Therefore, it is suggested that their testimony should prevail over testimony which is conflicting or contradictory. However, we have no reason to believe that the trial judge did not give proper weight to the testimony of these eyewitnesses. Moreover, other witnesses were eyewitnesses to the physical facts which they described, for example the location of the blood spot where plaintiff lay after the accident; the place where plaintiff's bicycle gouged the highway surface; and the nature of the damage which resulted to defendant's automobile.

At best, the defendant's contention, if applied in the case at bar, could only affect the question as to whether the plaintiff did in fact turn to the left in front of the defendant's car. As we view all of the evidence and the entire record in this case, the trial judge could well have given to the testimony of defendant and his wife the weight which their attorney claims for it and still have arrived at a finding of negligence on the part of the defendant. We find nothing in the record to indicate that the trial judge ruled against the possibility of plaintiff having made a turn to her left, after being passed by the two cars ahead of the defendant, especially since she was not warned of the approach of a third car.

From all of the facts testified to, and after giving proper weight to the testimony of eyewitnesses, the judge would have been justified in concluding that this accident would not have occurred if defendant had blown his horn. See Fink v. Lewark, 70 Wyo. 150, 246 P.2d 195, 198, 199, 200. Also, the judge would have been justified in concluding, if he did, that plaintiff, after allowing for the passing of two vehicles and not being warned that a third was to pass, started to resume the position on the highway which a bicyclist would normally use when not being passed. He had before him, in addition to the evidence already mentioned, testimony of the plaintiff and of her mother to the effect that plaintiff was going to the home of friends who live farther out on the highway, where a right-hand turn would then be made. There was nothing in the evidence to indicate a turn off to the left or any other reason for plaintiff to turn at the site of the accident.

It is not at all uncommon for a pedestrian or a bicyclist to veer back into a highway, toward the center, after being passed by a vehicle. A motorist, if exercising ordinary care, could reasonably anticipate such a move and should allow for it by holding a safe distance to the left, by slowing down to a safe speed or by sounding a warning. In that regard it has been held (1) that the driver of a motor vehicle, approaching a bicyclist from behind without warning, may not rely on the bicycle remaining at a specific distance from the edge of the road; (2) that a safe distance at which an automobile should pass a bicycle from the rear depends on circumstances and variations from perfectly straight driving or riding which may be anticipated from ordinarily careful persons; and (3) whether a motorist was negligent in failure to use reasonable care to pass sufficiently far to the left of a bicycle is for the jury or trier of the

facts. Stockfisch v. Fox, 275 Mich. 630, 267 N.W. 754, 755; Westman v. Bingham, 230 Iowa 1298, 300 N.W. 525, 526–527; 60 C.J.S. Motor Vehicles § 380, p. 935. See also Bosarge v. Spiess & Co., La.App., 145 So. 21, 22; and Hunt v. Los Angeles Ry. Corporation, 110 Cal.App. 456, 294 P. 745, 747–748.

In the Bosarge case at 145 So. 22, it was said that a person driving an automobile in close proximity to a child, not quite eleven years old, on a bicycle, is negligent in not expecting the child to do the unexpected and dart suddenly into danger. And in the Hunt case at 294 P. 747, it was said that a child, after mounting his bicycle and proceeding on his course, was under no duty to look back to see whether a bus was approaching.

In Wyoming, every person riding a bicycle upon a roadway has been granted all of the rights and has been subjected to all of the duties applicable to the driver of a vehicle by the Uniform Act Regulating Traffic on Highways, except as to those provisions which by their nature have no application. Section 31–165, W.S.1957. Therefore, the provisions of § 31–101, W.S. 1957, are applicable to this case. Said section provides that the driver of a vehicle overtaking another vehicle proceeding in the same direction "shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." In the same section, it is provided that the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle "on audible signal."

With respect to the sounding of a horn, § 31–204(a), W.S.1957, provides: "The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

Not only the weight of the evidence but in fact all of the evidence in this case which bears upon the subject shows that defendant was in violation of the two foregoing sections, in that (1) he did not pass to the left of plaintiff's bicycle "at a safe distance"; (2) he drove at least partially to the right side of the highway at all times up to the point of impact, which was before he was "safely clear" of the overtaken vehicle; and (3) he did not give audible warning with his horn.

Concerning his failure to use his horn, it may be said that the happening of the accident itself under the circumstances here present would warrant a finding that an audible warning was "reasonably necessary to insure safe operation." See Bosarge v. Spiess & Co., supra; Kinsler v. Simpson, 257 Mich. 7, 240 N.W. 98, 99; Chapman v. Pickwick Stages System, 117 Cal.App. 560, 4 P.2d 283, 284–285.

Without discussing the question of speed and whether or not defendant should have slowed down, both of which are points urged by counsel for the plaintiff, it is sufficient to say that the uncontradicted evidence, insofar as it relates to the portions of §§ 31–101 and 31–204 quoted above, amply supports a finding of negligence on the part of defendant.

*Contributory Negligence.* In considering whether the plaintiff failed to exercise due care for her own safety, which is urged by the defendant, we can accept as a correct test of contributory negligence for children the rule stated in 2A Blashfield's Cyclopedia of Automobile Law and Practice, § 1522, p. 456 (Perm.Ed.1951). Said rule is quoted and relied upon by the defendant. It states:

"* * * where a child is capable of exercising care and of going unattended upon the street, the test of whether the child has been guilty of negligence contributing to injuries sustained by collision with an automobile depends upon whether it has used that degree or extent of care which ordinarily prudent children of its age, capacity, and experience are wont to use under like circumstances * * *."

To sustain the findings of the trial court on the question of contributory negli-

gence, it is not necessary for us to find that plaintiff exercised the degree of care which an ordinarily prudent adult person would have used, but only the extent of care which an ordinarily prudent child of plaintiff's age, capacity and experience would have used under similar circumstances. Hunt v. Los Angeles Ry. Corporation, supra; Westman v. Bingham, supra. This question of contributory negligence, like the question of defendant's negligence, is for the jury or trier of the facts. Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 711, 42 A.L.R. 245.

Section 31-101 fixes no obligation upon the plaintiff to give way to the right in favor of the overtaking vehicle, except "on audible signal," which was not given in the instant case. Therefore, it cannot be said that plaintiff is guilty of contributory negligence for a failure to give way to the right. Dreher v. Divine, 192 N.C. 325, 135 S.E. 29, 30, 47 A.L.R. 696. If plaintiff did, as the defendant contends, turn to the left, it is fair to say that a preponderance of the evidence indicates that she remained in the right-hand lane of traffic and that she did not cross the center line of the highway.

The highway involved in this case being divided into two clearly marked lanes, it may be considered that § 31-107, W.S.1957, offers some measure as to the extent of variance in direction which may be permitted to the plaintiff. Said section specifies that, whenever any roadway has been divided into two or more clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

With respect to turning movements generally, § 31-115(a), W.S.1957, provides:

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 56 [§ 31-112] or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle

from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

This section deals specifically with the turning of a vehicle at an intersection or to enter a private road or driveway. While it also prohibits the turning of a vehicle from a direct course and moves from right or left until such movement can be made with reasonable safety, such prohibition must be construed with and in the light of the specific references to an intersection, private road or driveway, and also with and in the light of § 31-107 having to do with lanes of traffic.

We cannot say as a matter of law that a turn in the nature of a meandering within a single right-hand lane of traffic by a nine-year-old child on a bicycle is a violation of § 31-115(a) and for that reason is contributory negligence. 5A Am. Jur., Automobiles and Highway Traffic, § 354, p. 449 (1959). See also Dreher v. Divine, supra. It is common knowledge that a bicycle is ridden by balance which results in more or less meandering, especially if the rider is a child or if the rider slows down for passing vehicles or looks behind.

Without deciding the question as to whether the nine-year-old plaintiff did or did not turn to the left when the defendant was about to pass, we nevertheless hold that there was ample evidence to establish that any such turn was a meandering entirely within the right lane of traffic; that plaintiff had no warning or knowledge of defendant's approach; and that the plaintiff exercised due care for her own safety, according to the standard by which such care is measured for her.

*The Damages Awarded.* In connection with the amount of damages awarded by the district court, the total award of $11,588 was based upon the following figures: $3,500 for scars and disfigurement; $2,500 for

pain and suffering; $3,500 for injury to the right leg; $1,000 for her back injury; and $1,088 for medical expenses. The defendant contends that the award is excessive. No contest is offered, as far as the amount is concerned, on the allowance for medical expenses, but it is claimed that the other allowances are based upon conjecture and speculation without sufficient evidence to support them. In order to evaluate this contention, we deem it necessary to consider each allowance separately except the one for medical expenses.

■ With respect to the award for scars and disfigurement, we find ample and undisputed testimony to the effect that prominent scars resulted from the accident and leg operation. Such scars were described as being on the forehead, on the lip, on the back of the head and on the leg. They were characterized in the medical testimony as permanent. It was testified by one of the doctors that the scars were as they were because the lacerations were contused or bruised lacerations. Also, the plaintiff was described as a type of individual in whom the scars seldom disappear.

These scars and the disfigurement were pointed out during the trial to the court and the trial judge had an opportunity to observe them. In such a case, the amount to be assessed for damages suffered by the plaintiff by reason of her scars and disfigurement is within the discretion of the trier of fact. Detroit Taxicab & Transfer Co. v. Pratt, 6 Cir., 2 F.2d 193, 194; 10 Blashfield's Cyclopedia of Automobile Law and Practice, § 6464, p. 54 (Perm.Ed.1955); 25 C.J.S. Damages § 81, p. 590.

The allowance of $3,500 for the scars and disfigurement suffered by plaintiff was not based upon conjecture or speculation, and we are furnished no other reason for holding it excessive.

■ What we have said concerning the allowance for scars and disfigurement also applies to the allowance for pain and suffering. The nature and severity of the injuries were described by doctors who testified that the plaintiff had severe pain and suffering. The plaintiff herself told of her suffering and her parents described evidences of it. Also, there was a subsequent operation on the right leg, with plates being permanently affixed to hold the bone in place. Aside from the operation itself, there was a long period during which the limb was kept in traction. There was ample evidence to justify the allowance of $2,500 for the pain and suffering testified to, and we would have no basis for considering it excessive.

Regarding the $3,500 allowed by the trial court for "injury to the right leg," it cannot be disputed that plaintiff had severe injuries to the right leg, including a fracture of the right femur. As already indicated, the fracture was such that it required an operation to reduce the fracture, with plates being inserted to hold the bone portions in position. We recognize, however, that the question is not how badly was the right leg injured but what loss or damage resulted to the plaintiff therefrom?

■ The objective sought in awarding damages is to compensate plaintiff for her loss. 25 C.J.S. Damages § 81, pp. 589 and 591–592. Such damages cannot always be calculated with absolute certainty, but to be recoverable they must be susceptible of ascertainment with a reasonable degree of certainty. Logan v. Elliott, Tex.Civ.App., 61 S.W.2d 157, 159; Union Oil Co. of California v. Hunt, 9 Cir., 111 F.2d 269, 277–278; 15 Am.Jur., Damages, § 20, p. 410 (1958).

Bearing in mind that the medical expenses, the scars and the pain and suffering are compensated for through other items of the award, we must then determine what additional loss does plaintiff, from the evidence, appear to have as a result of the injury to her right leg. Her physician, A. A. Engelman, testified that the plates in her leg could not cause trouble in the future but could cause discomfort and have to be removed by another operation. He said that probably less than fifty per cent of such plates have to be removed. Being asked if plaintiff would be able to run, jump

and play as well as if she never had any plates in her leg, he answered that he believed she can do that.

The testimony of Dr. Whiston was to the effect that when he last saw plaintiff she had practically full range of motion in her hip and knee and was able to walk without a limp; that the only residual difficulty that could occur as a result of the injury would be some limitation of the motion in the knee, particularly in bending the knee; otherwise, she should make a complete and normal recovery. He said that he did not believe there should be any future pain or suffering from the injury. He testified that the plates are usually left in place, as they are made of non-reactive metal and they do not ordinarily cause any trouble. At the time he last saw plaintiff, he said the fracture had completely healed.

We must admit that the question here to be resolved is a close one and that it has given us considerale concern. It is recognized that plaintiff has a right leg which has been fractured and which will always carry the plates used in mending it. Unfortunately, however, no attempt was made by counsel for the plaintiff to equate the injury to a percentage or other measure of disability. The medical testimony and other evidence from which the extent of permanent or future disability in the right leg could be measured or assessed was weak.

It is not good practice in damage actions of this kind for a claimant to expect a jury or judge to award damages for permanent injuries and permanent disabilities without affording, insofar as evidence for that purpose is available, a basis for measuring plaintiff's loss or permanent disability. See Shannon v. Shaffer Oil & Refining Co., 10 Cir., 51 F.2d 878, 882, 78 A.L.R. 851; 15 Am.Jur., Damages, § 23, p. 415 (1938).

■ Damages are not to be awarded for possible injuries. They must be probable in the sense that they are reasonably certain to result. The general rule, as stated in 10 Blashfield's Cyclopedia of Automobile Law and Practice, § 6441, p. 43 (Perm.Ed. 1955), is:

"When a physician gives evidence as to the permanency of an injury, it must show more than a mere chance. It must establish a balance of probability, proof of some probability being insufficient. The conclusion must be shown to be more probably true than not true."

■ In the case at bar, permanent damage to the right leg was established by proof of the fact that such leg has been treated with the use of permanent plates, which may cause future discomfort and require future attention, and some loss of motion in the knee may be present permanently. In addition, Dr. Engelman testified that plaintiff needs to wear a shoe with a special heel called a Thomas heel. The whole of this evidence is sufficient to have justified the trial court in finding that there was permanent injury and damage to the leg. The assessment made was reasonable and there is no basis or criterion by which this court could properly substitute its judgment for that of the trier of fact.

Concerning the alleged injury to plaintiff's back, the plaintiff herself complained of aches in the back. Dr. Engelman testified that there was an "incomplete" fracture of the left transverse process second lumbar. At the time of trial, he said that it had healed. Being asked if pain from it might continue, he replied, "I don't think so, transverse process injuries don't really do that."

Dr. Whiston testified that he examined two X rays of the back; that these X rays were entirely negative except for a congenital deformity, something plaintiff was born with; that if there had been a fracture, it would have shown in the X rays. Dr. Engelman claimed that such a fracture would sometimes show in a subsequent X ray and sometimes it would not.

■ Whether there was or was not an incomplete fracture of the left transverse process second lumbar, the doctors were agreed that no evidence of it continued and no complications from it resulted. At least no evidence was offered to show a perma-

nent injury to the back from the accident. In the absence of a showing to that effect, it follows that plaintiff is not entitled to any separate recovery for injury to her back.

The appellant has claimed error on the part of the trial court in overruling his motion for a new trial. The motion was predicated upon newly discovered evidence pertaining to plaintiff's injuries. Such evidence would not, if true, make a result different from that which we have arrived at, especially since the allowance for injury to plaintiff's back is disallowed.

The judgment of the district court should be modified by deleting the award of $1,000 for injury to plaintiff's back. As so modified, said judgment is affirmed.

Affirmed as modified.