WM. C. FERREIRA *v.* HONOLULU STAR-BULLETIN, LIMITED.

No. 4123.

SEPTEMBER 14, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ AND LEWIS, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C. J.

This is a civil action instituted by plaintiff against defendant for damages allegedly sustained by plaintiff as a result of a breach of contract by defendant for failure to publish in its newspaper a certain theatrical advertisement. The case was tried before a jury.

Plaintiff is the owner and operator of a theater located at Kamanuwai Lane near 116 North Beretania Street in Honolulu, known as "Beretania Follies." He has operated the particular theater for approximately thirteen years

but has been engaged in the show business through a total period of about twenty-five years.

Defendant is publisher of the Honolulu Star-Bulletin, a daily afternoon newspaper of general circulation with its principal office in Honolulu. In the middle of the year 1955, according to the testimony of a witness, the Star-Bulletin had a daily circulation of approximately 85,000, and the Honolulu Advertiser, a morning newspaper, about 46,000 daily and 68,000 on Sundays.

Plaintiff's original complaint alleged, in substance, that on or about June 21, 1955, defendant, in consideration of $63.20 paid to it by plaintiff, promised and agreed to publish a certain advertisement on the 24th and 25th days of June, 1955, but that defendant failed to publish said advertisement. He prayed for general damages in the sum of $50,000 and as punitive damages the sum of $50,000. At the conclusion of his case, plaintiff was allowed, over objection, to amend said allegation to read as follows: "On or about the 21st day of June, 1955, defendant promised and agreed to publish * * *, on the 24th and 25th days of June, 1955, and daily thereafter, except Sundays, till further notice from plaintiff to defendant, an advertisement * * *, plaintiff to pay defendant for publishing said advertisement as follows: $63.20 for the portion of the week ending June 25, 1955, and subsequent insertions to be paid for weekly in advance." Plaintiff's original prayer was also allowed to be amended by striking the demand for punitive damages.

Immediately thereafter, defendant moved to dismiss the case upon two grounds: (1) that there was no evidence upon which the jury could find that defendant entered into an agreement with plaintiff as alleged in the complaint; and (2) that there was no evidence from which the jury could properly find that plaintiff had suffered any damages as a result of defendant's failure to publish

the advertisement. The trial court granted the motion on the second ground and entered judgment accordingly. His motion for a new trial having been denied, plaintiff is now before this court on appeal from said judgment.

From the evidence adduced by plaintiff, the following facts appeared. From early 1947, plaintiff presented burlesque stage shows at his theater. In June, 1955, plaintiff negotiated with one Chloe Carter of New York, a feature entertainer, to appear at his theater. Under written contract dated June 15, 1955, Chloe agreed to perform "commencing on or about June 24th, 1955, to July 24th, 1955, with the option of closing Aug. 24, 1955."

About a week before June 24, 1955, Chloe's opening date, plaintiff requested the Advertiser to advertise Chloe and to make mats for that purpose. He also requested that one copy of the mat be forwarded to the Star-Bulletin. In the meantime, plaintiff called the latter and informed one Gertrude, a clerk in the advertising department, that a mat would be forwarded by the Advertiser and that she should call him if the mat was approved. On June 23, Gertrude called and notified plaintiff that the mat was approved and payment of $63.20 should be made for his advertisement. Whereupon, he immediately went to the Star-Bulletin and personally handed to Gertrude a check for the amount, being the charge for an insertion on the 24th and another on the 25th of June. The check was deposited by the Star-Bulletin to its account at the Bank of Hawaii on the following day.

On the 24th, plaintiff discovered that the advertisement did not appear in the Star-Bulletin. Plaintiff called Gertrude who informed him that the advertisement was canceled. Thereafter when Mr. Tate, whom plaintiff referred to as manager of the display department, was contacted, plaintiff learned from him that the advertisement was canceled because the editor did not approve. Plaintiff

brought suit on July 5, 1955, and on the following day, defendant made a refund of $63.20 by mailing its own check to plaintiff.

The sole issue for this court's determination is whether the trial court erred in dismissing the suit without permitting the evidence to be considered by the jury. In dismissing the suit the court ruled as follows: (1) "That there was sufficient evidence to go to the jury on the question of whether a contract existed between plaintiff and defendant for the publication of plaintiff's advertisement"; (2) "That there was not sufficient evidence to go to the jury on the question of whether plaintiff was damaged by defendant's failure to publish plaintiff's advertisement as plaintiff contends defendant should have done, nor was there any sufficient evidence from which the jury could determine the amount of plaintiff's damages even if it be assumed that there were such damages."

Obviously relying upon the trial court's ruling that there was more than a scintilla of evidence to submit to the jury the question of whether there existed a contract, plaintiff, appellant here, has properly found it unnecessary to dwell on that point on this appeal. Defendant, appellee here, however, disputes the particular ruling and contends that there was no evidence from which the jury could find that there was any express or implied agreement by defendant to publish the advertisement in question. Although defendant was the prevailing party under the judgment, it infers, by urging that "a correct judgment will be affirmed even though the reason stated for it is wrong," that the correct reason of the trial court should have been the insufficiency of the evidence pertaining to the existence of the contract. This position of defendant is untenable.

It is elementary in the law of contract, requiring no citation of authorities, that when a person receives payment of a consideration in contemplation of his performing

an act, the law presumes a promise on his part to perform. Upon a review of the evidence, we can arrive at no other conclusion than that there was sufficient evidence, more than a scintilla, to go to the jury for its determination of the facts concerning the issue of the contractual relation between the parties. Plaintiff gave at least prima facie proof of transactions between the parties showing all the elements necessary to constitute a valid implied contract. First, plaintiff, who frequently advertised in defendant's newspaper, telephoned the clerk in defendant's advertising department to notify her that a mat for advertisement would be forwarded by the Advertiser where the mat was made. The clerk next notified plaintiff that the mat was approved and called for payment. Plaintiff personally went to defendant's establishment and handed the clerk a check for $63.20 for two insertions, one on June 24 and one on June 25. Defendant banked the check to its own account, but no advertisement appeared in the Star-Bulletin. Later, upon inquiry, plaintiff was informed that the advertisement was canceled because the editor subsequently disapproved. Defendant's refund check for the amount of $63.20 was mailed to plaintiff only after suit was filed. It is true, as contended by defendant, that a newspaper may legally refuse to accept an advertisement and refusal may be made without giving any reason whatever. But defendant is confronted here with a situation where it did accept. When the mat was categorically approved and payment accepted by defendant, there was a meeting of the minds of both parties, an essential element of a binding contract. *Richards* v. *Ontai,* 19 Haw. 451. A subsequent change of mind and disapproval of the mat by defendant did not alter its contractual obligation.

We are not concerned here with whatever countervailing evidence defendant might have presented. The case terminated abruptly when dismissed on defendant's

motion at the conclusion of plaintiff's case. On the basis of the evidence at hand, we conclude that the trial court was correct in ruling that there was sufficient evidence to go to the jury on the contract issue.

We consider and discuss now the second and more important facet of the trial court's ruling, to wit, the issue of damages. Despite the ruling favorable to plaintiff on the contract issue, the case was not submitted to the jury by the court on the ground "That there was not sufficient evidence to go to the jury on the question of whether plaintiff was damaged by defendant's failure to publish plaintiff's advertisement as plaintiff contends defendant should have done, nor was there any sufficient evidence from which the jury could determine the amount of plaintiff's damage even if it be assumed that there were such damages."

Plaintiff sought to show damages, claimed to have resulted from defendant's breach, by a rather abstract and indirect method. Two persons connected with the Advertiser and one with the Star-Bulletin testified in general terms as to the value of newspaper advertising. Plaintiff relied wholly upon his own testimony and exhibits in his efforts to establish damages. A careful examination of his testimony fails to show any statement, direct or indirect, as to the precise or even approximate loss sustained by him in terms of dollars and cents. In essence, he testified that from long experience in the theatrical business, he was cognizant of the beneficial effect of newspaper advertising upon the operation of his business. He gave much emphasis to its value, characterizing advertising as "very essential" and productive of the "maximum amount of gross receipts" when the two dailies advertised. No figures or data were produced to enable the jury to make any reasonable mathematical computation of the loss allegedly incurred by him as a result of defendant's failure to advertise.

Plaintiff estimated that his profits generally averaged 20 per cent of the gross receipts. However, in the absence of figures, he sought roughly to show, percentage-wise, how much increase or reduction there might have been in the total attendance. Comparing the relative effect of advertising or the lack of advertising in either of the two dailies, he testified: "I have attributed that to a rough ratio of 45 per cent to the Advertiser and 55 per cent to the Star-Bulletin." Counsel argues that the foregoing testimony referred to a "falling off" of gross receipts resulting from a drop in the attendance. There was, however, no testimony as to whether the gross receipts actually dropped. Examining plaintiff's receipt books in evidence, we find that the gross cash receipts on June 24, 1955, were $175.50 and on June 25, 1955, $228.00. The same advertisement which defendant did not publish appeared in the Advertiser from June 24 to July 14, 1955, inclusive. This naturally would raise the problem of apportioning the $175.50 and $228.00 between the patrons who read and who did not read the Advertiser. Then the problem would follow of ascertaining the additional number of patrons who might have attended if defendant had also published the advertisement. In attempting to use the ratio in question as a criterion, to what figure or figures should the 55 per cent be applied? We find a dearth of evidence in this case which even remotely suggested a method by which plaintiff's loss could be computed with reasonable certainty. It is revealing to note, in passing, that despite the daily publication by the Advertiser of plaintiff's advertisement during the particular period, for the same show the receipts dropped on June 26 to $133.50, on June 27 to $90.00 and on June 28 to $67.50.

It is now a well established principle in the law of damages that, when one sustains loss by breach of a contract, he is entitled to have just compensation com-

mensurate with his loss. The authorities declare with unanimity that damages awarded should be in such amount as will actually or as precisely as possible compensate the injured party. 15 Am. Jur., *Damages*, § 12.

Plaintiff cites two cases on the question of damages. We have examined them together with a mass of others including those cited by defendant. The case of *Ah Quai* v. *Puuki*, 11 Haw. 158, was a replevin case, tried jury-waived, involving the question of damages resulting from the detention of a heifer. Plaintiff's evidence placed the amount of liability at $50. Such evidence, considered in the light of all other evidence and circumstances, furnished a basis upon which the trial court awarded plaintiff the sum of $10. On appeal, this court affirmed the judgment. The essence of this court's ruling was that in view of the contradictions appearing in the evidence, it was for the trial court to determine the facts, and that it was its province to estimate the damages on all the evidence and circumstances of the case.

The case of *Coney* v. *Lihue Plantation Company*, 39 Haw. 129, is discussed at great length by both parties. That case was also a tort case, but tried by a jury. Plaintiff was awarded damages in the sum of $3,711. There was ample evidence in that case which showed that for more than ten years prior to the year when defendant commenced to discharge waste water into plaintiff's fishery waters, causing pollution, plaintiff's yearly catch of fish was substantially higher than it was for the year 1947 with a corresponding substantial difference in the amount of profits realized for the latter year from the average amount for the prior years. In sustaining the verdict, this court summarized, at page 140, as follows: "Suffice it to say that there is in the record substantial evidence more than a scintilla, not only to prove injury or damage, but to establish a reasonably certain amount

of actual damages traceable with reasonable certainty directly to the tortious acts of the defendant to the exclusion of other causes, which evidence in the opinion of this court required that the question of the amount of damage be submitted to the jury consonant to the rule and supports the verdict in its entirety as a matter of law." This court, in that case, cited *Gilbert* v. *Kennedy,* 22 Mich. 116, and adopted the rule pronounced by the supreme court of Michigan that: "The damages to be awarded should be such as *adequately* to compensate the actual loss or injury sustained. This is an obvious principle of justice from which we see no reason to depart. But in the application of the principle, difficulties often arise in ascertaining, with anything like accuracy, the actual damages which the plaintiff has suffered from the injury; or what sum will produce adequate compensation." Following the theory of the Michigan court, this court, in *Coney* continued, at page 139: "The principles, so stated, are consistent with the general proposition that the law never insists upon a higher degree of certainty as to the amount of damages than the nature of the case admits, and that where, as here, the fact of damage is established, a more liberal rule is allowed in determining the amount."

It is to be noted that a distinction is made in the law between the amount of proof required to establish the fact that the injured party has sustained some damage and the measure of proof necessary to enable the jury to determine the amount of damage. It is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount. *Story Parchment Company* v. *Paterson Parchment Paper Company,* 282 U.S. 555, 75 L. Ed. 544; *Manss-Owens Co.* v. *H. S. Owens & Son,* 129 Va. 183, 105 S.E. 543; *Dale Oil & Refining Co.* v. *City of Tulia,* 25 S.W. 2d 671 (Tex. Civ. App. 1930). However, the rule that uncertainty as to the

amount does not necessarily prevent recovery is not to be interpreted as requiring no proof of the amount of damage. *Shannon* v. *Shaffer Oil & Refining Co.,* 51 F. 2d 878, 78 A.L.R. 851, *Western Union Telegraph Co.* v. *Ramsey,* 261 Ky. 657, 88 S.W. 2d 675; 103 A.L.R. 541. The extent of plaintiff's loss must be shown with reasonable certainty and that excludes any showing or conclusion founded upon mere speculation or guess. "To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a basis for measuring the plaintiff's loss with reasonable certainty. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise * * *." 15 Am. Jur., *Damages,* § 23; see also § 150 on loss of profits.

In the instant case, we are of the opinion that plaintiff's evidence failed to present any measure by which the jury could reasonably fix the amount of damages. Without a basis for its application, the ratio of 45 per cent to 55 per cent would be of no avail.

A case in point is *Morristown Lincoln-Mercury* v. *Roy N. Lotspeich Publishing Company,* 298 S.W. 2d 788 (Ct. of App. Tenn. 1956). There the plaintiff, an automobile dealer, entered into an agreement with a publisher, the defendant, to publish certain advertising relating to the sale of new and old automobiles. Upon failure on the part of the defendant to publish, suit was brought. The jury returned a verdict in favor of the plaintiff for the sum of $3,000. The testimony of the plaintiff's only witness, its president, was that the plaintiff was forced to cancel its order for 20 new cars because the defendant refused to advertise, and that its profits per car would have been $400 or $500, although the witness admitted that he was not exact and that "sometimes you lose money on a car." He further testified that the company "expected" to sell

40 or 50 cars on the strength of the advertisement. The appellate court held that the expected sale was "mere speculation as was plaintiff's anticipated profits, neither of which could be determined with reasonable certainty," and accordingly rejected the verdict but modified the judgment by awarding only nominal damages.

Defendant contends that plaintiff's evidence was insufficient to furnish a basis for measuring his damages. We agree. A countless number of judicial precedents are available on the subject of the measure of proof necessary in damage cases. We recently ruled on such a matter in *Rainbow Island Productions, Limited* v. *Leong,* 44 Haw. 134. The cases involving newspaper advertisements are not numerous, but they follow the "reasonable certainty" rule: *Morristown Lincoln-Mercury* v. *Roy N. Lotspeich Publishing Company, supra; North Star Trading Co.* v. *Alaska-Yukon-Pacific Exposition,* 68 Wash. 457, 123 Pac. 605; *Stevens* v. *Yale,* 113 Mich. 680, 72 N.W. 5. In the last case, damages were claimed for loss of profits on the ground that names were not included in an advertisement in compliance with a contract. The court denied damages, holding: "The injury suffered, if any, was a loss of profits as would have resulted from advertising,—a matter of mere conjecture, depending upon the number who might read and act upon the advertisement."

Having disposed of the two conflicting bases upon which the trial court entered judgment dismissing plaintiff's suit, we come finally to the problem of ruling on the appeal.

It is axiomatic that when there is a breach of a valid and binding contract, if actual damages cannot be proved with reasonable certainty, the law infers some damages. The party whose legal right has been invaded by such breach is entitled to at least nominal damages, for the law recognizes that every injury imports damage. In the early case of *Ah Quai* v. *Puuki, supra,* the nominal damage rule was recognized by this court.

Where compensatory damages are not computable, although a breach of contract is proven, the only award that can be made is nominal damage. Applying the maxim "de minimis non curat lex," an appellate court should not reverse because of failure to award nominal damages, where no question of costs or other substantial right of the appellant is involved. 3 Am. Jur., *Appeal and Error,* § 1004; *Chambers* v. *Frazier,* 29 Ohio St. 362 (1876); *Braun* v. *Peet,* 97 Neb. 443, 150 N.W. 256. However, as stated in the last cited case: "The failure to allow nominal damages is reversible error, where it affects a substantial right of plaintiff or prevents him from recovering costs." This is illustrated by *Potter* v. *Mellen,* 36 Minn. 122, 30 N.W. 438, in which the appellate court reversed and granted a new trial, there being costs involved.

In the case at bar, defendant's motion to dismiss the complaint was granted at the conclusion of plaintiff's case. Defendant, therefore, was not required to proceed with its proof in support of the contention that there was no contract. In view of the trial court's conclusion that there was shown more than a scintilla of evidence on the contract issue, the case, when completed, should have been submitted to the jury for its determination of the facts on that issue. The question of damages could have been disposed of under proper instructions.

*Hancock* v. *Hubbell,* 71 Cal. 537, 12 Pac. 618, illustrates what should have been done. The evidence in that case substantiated the existence of a contract and breach thereof. The trial court nonsuited the plaintiff. The appellate court reversed, holding: "* * * as the contract was proved to have been violated, the former [plaintiff] was entitled to have the jury determine, upon a proper charge of the law by the court, whether or not they would render a verdict for nominal damages in his favor. And, if they had returned a verdict for the plaintiff for nominal

damages, a judgment therefor would have been proper." Again, in *Duplex Envelope Co.* v. *Baltimore Post Co.*, 163 Md. 596, 163 Atl. 688, a newspaper advertisement case, the trial court withheld the case from the jury. Reversing and awarding a new trial, the appellate court said: "Furthermore there was evidence from which the jury could have found that, * * * the defendant repudiated the contract. Consequently the plaintiff was entitled to recover at least nominal damages, and there was error in granting a prayer to take the case from the jury." To the same effect is *Potter* v. *Mellen, supra.*

What amount constitutes nominal damage is a question which has been extensively discussed. A vast majority of cases hold that nominal damages are a token award only and usually adjudge one dollar to be the amount. "It has been said that while the law implies damages from the violation of every right, without proof of actual detriment, it implies the smallest appreciable quantity. One dollar is the amount usually adjudged where only nominal damages are allowed." 15 Am. Jur., *Damages*, § 5. By way of comparison, it is interesting to observe that in *Lee* v. *Mark C. Tredennick Co.*, 126 Misc. Rep. 613, 214 N.Y. Supp. 492, the court awarded six cents plus costs; that in *Morristown Lincoln-Mercury* v. *Roy N. Lotspeich Publishing Company, supra,* the award was $300.00 as nominal damages. With the latter award, this court does not agree, not only because it is contrary to the prevailing authorities on nominal damages, but because in *Ah Quai* v. *Puuki, supra,* this court held: "If the heifer had been surrendered to the plaintiff at the time of the action being brought, then only *nominal damages* could have been awarded, but by keeping the plaintiff out of possession up to the trial, the plaintiff is entitled to *substantial damages* (emphasis added). * * * The plaintiff being entitled to more than nominal damages, it was the prov-

ince of the trial judge in this case or of a jury in other cases to estimate such damage on all the evidence and circumstances of the case and we cannot say that the trial judge erred in awarding damages at $10.00." Having held the sum so awarded as substantial, it is obvious that this court was cognizant of the token amount deemed by the great weight of authority to constitute nominal damage. See also *Lund* v. *Lachman,* 29 Cal. App. 31, 154 Pac. 295.

In the case before us, as it now stands on the record, defendant prevailed on its motion to dismiss but was not allowed costs. While the case should not have been dismissed, it is our view and we so conclude that plaintiff did not prove that he was entitled to substantial damages. If the judgment were reversed and a new trial granted, upon the evidence adduced by plaintiff only nominal damages would be awardable. In the words used by some appellate courts, nominal damages are "a mere peg to hang costs on." If such damages were granted, costs would be allowable to plaintiff as the prevailing party.

As shown by the cases cited earlier, it is proper for an appellate court to order a new trial to do justice to the appellant in the matter of costs or other substantial rights. A new trial, however, is necessarily costly to all parties involved. A new trial should not be ordered in the present case if defendant will pay to plaintiff his costs and nominal damages.

For the foregoing reasons, the judgment is reversed and the case remanded for a new trial, unless within ten days from the date of receipt of the mandate herein by the trial court or such additional time as said court shall allow, the defendant consents in writing to the entry of judgment in favor of the plaintiff for the sum of One Dollar and his costs.

*O. P. Soares* for appellant.

*Richard E. Stifel (Anderson, Wrenn & Jenks* on the briefs) for appellee.