**H. E. BENHAM, Plaintiff-Appellee,**

**v.**

**WORLD AIRWAYS, INC., a corporation, Defendant-Appellant.**

**No. 24291.**

United States Court of Appeals, Ninth Circuit.

Aug. 25, 1970.

As Amended on Denial of Rehearing Oct. 2, 1970.

See also, D.C., 253 F.Supp. 588.

Gregory A. Harrison (argued), Hart H. Spiegel, John E. Munter, of Brobeck, Phleger & Harrison, San Francisco, Cal., Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for appellant.

Frank Padgett (argued), of Padgett, Greeley, Marumoto & Akinaka, Honolulu, Hawaii, for appellee.

Before JERTBERG, BROWNING, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Defendant World Airways, Inc. ("World"), appeals from a judgment awarding plaintiff Benham damages for repudiation of a contract to form a corporation to engage in a new business venture. World limits its attack on appeal to that part of the judgment awarding $252,435.03 damages for loss of prospective profits and $15,093.38 loss of future wages.

Benham, a Hawaiian resident, and World, a Delaware corporation with its principal office in California, began negotiations in October 1964 to form a new business venture to operate "turn-around services" for airlines at the Honolulu airport. The turn-around services were to consist of "inside" or office services and "outside" or "ramp" services, such as baggage handling, refueling, passenger loading and unloading. At that time Benham owned and operated a small inside services business in Honolulu, the assets of which were then worth about

$5000. He also owned 10 percent of the stock of Air Service Corporation ("ASC"). ASC was handling ramp services for about 50 to 60 transits per month. It owned ground equipment valued at about $70,000.

In October of 1964 Benham and World entered a contract in which they agreed that each would contribute $5000 cash in return for stock in a corporation to be formed, that Benham would contribute the assets of his inside services business, that World would assist in obtaining $100,000 to finance the acquisition of ASC, that World would own 51 percent of the stock of the new corporation, that Benham would be employed as president at an annual salary of $18,000, and that both would use their best efforts to put the venture in operation by December 1, 1964.

Benham undertook the preliminary work. Negotiations were started to acquire ASC, but no contract for the acquisition was reached. In December 1964, World decided that it would not go forward for the given reasons that it did not think the business could be successfully launched with as little capital as the venturers earlier contemplated and because it did not think the new business would make money. World accordingly notified Benham of its withdrawal in December of 1964. Benham made no effort to pursue the new business on his own or to obtain a new venturer. He continued his inside services business and retained his fractional interest in ASC up to and including the time of trial.

■ Although Hawaii recognizes that loss of future profits is an appropriate element of damages in an action for breach of contract, it also requires that to sustain a claim for such profits, "facts must exist and be shown by the evidence which afford a basis for measuring the plaintiff's loss with reasonable certainty. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise. * * *" (Ferreira v. Honolulu Star-Bulletin Ltd. (1960) 44 Haw. 567,

576, 356 P.2d 651, 656. *Accord,* Restatement of Contracts (1932) § 331; 5 A. Corbin, Contracts (1964) § 1022, pp. 138–139.) The task of a claimant is, of course, all the more difficult when a new enterprise is concerned. The proof of future profits in this case never rose above the level of hope and conjecture. In determining damages for loss of profits, the district court relied almost entirely upon Mr. Benham's predictions of the income of the new business operated as a going concern. Those predictions, in turn, rested on a series of assumptions, including these: ASC would sell its assets to the new corporation for approximately $70,000; the combined assets of ASC and of Benham's own firm would provide ample equipment to service 250 transits per month for 15 customers; the customers other than World itself and ASC's two customers would emerge by defection from the new firm's existing competitors, primarily Aloha Airlines; from that combination of ingredients, the new firm would earn a net profit in its first year of $100,000 and a net profit of $449,520 during each of the next succeeding three years. None of those assumptions is supported by the evidence.

In part, the assumptions rested on expectations about the conduct of third persons. Thus, Mr. Benham assumed that an unidentified lender would lend $100,000 to the new operation. No one was produced who testified that he would have supplied the financing to the new firm, to World, or to Mr. Benham. ASC had undertaken negotiations looking toward its acquisition by the new corporation, but neither Benham nor World controlled ASC, and ASC was not under any contractual obligation to sell. Mr. Benham believed that the turnaround business could be launched with ASC's outside equipment and his own, but there was no evidence that any turnaround business of the magnitude he projected was, or could have been, so operated. ASC's turnaround services were not comparable in that it handled ramp services only and those services were rendered to

2 customers, not 15. Mr. Benham's business was a small operation confined to inside services. The new firm's principal competitor, Aloha, had invested over $200,000 in equipment when it commenced business in 1961. Hawaiian invested $400,000 in ground equipment when it reentered the field in 1968. The essential determination that the new firm could successfully divert the custom of its competitors is likewise unsupported by the record. That conclusion rested on the testimony of Benham that, before the contract was entered, the president of World had told him that he thought he could influence some of the airlines to patronize the new firm and upon a showing that a large number of Aloha's customers went with Hawaiian when the latter reentered Honolulu. World's president neither represented nor promised to produce those customers. All the president's statement amounted to was an expression of optimism about the future of the business. There was no testimony by potential customers that any had been willing to have patronized the contemplated operation. Benham's own witness, Baille, testified that the diversion of custom was difficult and time consuming because the airlines "don't switch around every day, and they have got to have a good reason to move from one contract to another."

The airlines' switch to Hawaiian was not comparable for two reasons. First, the switch occurred several years later, in 1968, and we cannot assume that the determinant considerations had existed unchanged since 1964. Second, the equipment investments at Hawaiian and Aloha materially differed from those contemplated by World and Benham.

As for the specific amounts recoverable, the district court's findings that the new venture would have earned net profits of $100,000 in 1964, its first operational year, and $449,520 in each of the next succeeding three years are based, respectively, on a statement by World's president made during his contract negotiations with Benham that he thought the business could make that much in its first year and on Benham's opinion about the later prospects of the new venture. Those cheerful prognostications are worth no more than the factual data upon which they were based. The factual foundation was absent, and the opinions accordingly collapse. (Overstreet v. Merritt (1921) 186 Cal. 494, 200 P. 11; see also Macmorris Sales Corp. v. Kozak (1968) 263 Cal.App.2d 430, 69 Cal.Rptr. 719; Levy v. Firks (1963) 222 Cal.App. 2d 429, 436, 35 Cal.Rptr. 207, 211-212.)

It is, of course, immaterial that Benham honestly entertained the opinions he expressed. The legal issue is not credibility; it is the certainty of the data upon which the opinions were based. The required certitude is in no way enhanced by proof that World's president was as optimistic as Benham before the business was begun.

Aside from the lack of factual data to support the opinion testimony, there is an additional deficiency in the proof. Benham offered neither a legal nor a factual basis to sustain an award of damages for a four-year period. The contract contemplated the formation of a new corporation to conduct a business commencing December 1, 1964. It also contemplated Benham's employment by that corporation. No term of any kind was specified either for the duration of World's participation in the venture or of Benham's employment.

Some contracts for an indefinite term contain provisions from which the duration can be fixed with reasonable certainty, and sometimes the circumstances surrounding the bargain supply the foundation for implying a fixed term. (E. g., Town of Readsboro v. Hoosac Tunnel & W. R. Co. (2d Cir. 1925) 6 F.2d 733; Haggerty v. Warner (1953) 115 Cal.App.2d 468, 252 P.2d 373.) But where, as here, there is nothing in the contract itself or in the background of the contract by which to fix a specific time within which World's participation in the venture or in the venture itself was to continue, the life of the obligation is measured only by the

elusive standard of a reasonable time and it is terminable upon reasonable notice. (*E. g.*, Consolidated Theatres, Inc. v. Theatrical Stage Employees Union (1968) 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325; Freeport Sulphur Co. v. Aetna Life Ins. Co. (5th Cir. 1953) 206 F.2d 5; Holt v. St. Louis Union Trust Co. (4th Cir. 1931) 52 F.2d 1068; J. C. Millett Co. v. Park & Tilford Distillers Corp. (N.D.Cal.1954) 123 F.Supp. 484, 492–493; 1 S. Williston, Contracts (3d ed. 1957) § 38, pp. 112–117.) The burden was upon Benham to prove facts from which the district court could convert the standard of reasonable time into the months or years for which he claimed damages. (*See, e. g.*, J. C. Millett Co. v. Park & Tilford Distillers Corp., *supra*, 123 F.Supp. at 496; Bach v. Friden Calculating Mach. Co. (6th Cir. 1946) 155 F.2d 361, 365.) Benham completely failed to carry that burden.

The district court recognized that the employment aspect of the contract presented different questions of duration and damage ascertainment from those involved in the joint venturing phase. It awarded an amount equivalent to the difference between the $18,000 salary provided and the amounts actually earned by Benham for a period of 25 months.

■ Even though no specific term of employment was established by the agreement, we agree that Benham was not to be simply an employee at will, because the promise of employment was accompanied by consideration other than Benham's promise to work for the new company. (*See, e. g.*, Restatement (Second) of Agency § 442, comment c.) But Benham refers us to nothing in the record, and we perceive nothing, to sustain the finding that 25 months or any other specific period of time was a reasonable period for that employment to endure. The findings upon which the award of damages for lost salary was based are therefore clearly erroneous.

The remaining arguments of counsel do not require discussion.

That portion of the judgment awarding to Benham $4050.70 plus costs is affirmed; the remainder of the judgment is reversed, and the cause is remanded for a new trial limited to the issues of damages for loss of future profits and damages for loss of wages. Each party shall bear his own costs on appeal.