894 P.2d 113

Franklin K. OMURA, Plaintiff–Appellee,

v.

AMERICAN RIVER INVESTORS, a Hawai'i limited partnership, Defendant–Appellant and Anna H. Cho, dba No Ka Oi Hawaii, Co., Defendant.

No. 16776.

Intermediate Court of Appeals of Hawai'i.

May 8, 1995.

Jerry A. Ruthruff, on the brief, Honolulu, for defendant-appellant.

Margaret C. Jenkins (Goodsill Anderson Quinn & Stifel, of counsel), on the brief, Honolulu, for plaintiff-appellee.

Before WATANABE and ACOBA, JJ. and SOONG Circuit Judge in place of BURNS, C.J., recused.

ACOBA, Judge.

On October 1, 1992, Plaintiff–Appellee Franklin K. Omura (Omura) brought suit in the district court against Defendant–Appellant American River Investors (ARI), a Hawai'i limited partnership and Defendant Anna H. Cho (Cho), doing business as No Ka Oi Hawaii, Co., seeking damages for violation of an agreement between Omura and ARI. On October 19, 1992, ARI appeared in court and entered a general denial. Cho was subsequently dismissed from the case.[1]

1. At trial, the attorney for Omura indicated that, "She [(Cho)] is being dropped from the law- suit."

A non-jury trial was held on November 25, 1992. The court found in favor of Omura and awarded him $4,000.00. Judgment was entered on December 22, 1992, and ARI appealed therefrom, contending that the court's award of damages was not supported by the evidence. For the reasons stated herein, we agree with ARI's position.

## I.

The following facts were adduced at trial. Since 1987, Omura operated a "Dave's Ice Cream" franchise in a shop in the Waimanalo Shopping Center (the Center) that he leased from ARI. Omura sold hand-dipped ice cream, which is ice cream that is scooped and delivered to the customer at the time of sale, in contrast to ice cream that is pre-packaged for sale to the customer. In June 1990, ARI signed an agreement with Omura, agreeing not to allow any other tenant in the Center to sell hand-dipped ice cream. However, Cho, another tenant at the Center, began to sell hand-dipped ice cream on August 16, 1992 with the alleged permission of ARI. Cho continued to sell hand-dipped ice cream until November 5, 1992.

Omura testified that gross sales decreased as a result of Cho's ice cream sales. Omura's sales in the second half of August fell 20% when compared to sales in the first half of August. In the past, sales during the first half and second half of August were "about the same." Omura also testified that monthly sales had increased each year except during the period from August 1992 to November 1992. A summary of Omura's gross sales receipts from July 1992 to November 1992 was received in evidence. Charts showing that sales in 1992 decreased from sales in 1991 were also received in evidence.

No evidence as to Omura's costs was submitted.

ARI presented evidence that Omura's decreased sales during August resulted from a decrease in tourists visiting the Center. Charts and sales figures received in evidence, indicated that "Subway's," another tenant in the Center, purportedly having the same customer base as "Dave's," had a sales pattern like "Dave's." "Subway's" had also suffered a sales decrease during August 1992, although August was normally a high sales volume month. Cho's husband also confirmed that during August 1992, less tourists were arriving at the Center than in the past.

ARI also introduced evidence of Cho's sales revenue for hand-dipped ice cream. Cho's husband testified that the store sold about 3,000 cones over the relevant period for $1.25 to $1.35 each. Omura testified, however, that Cho's sales did not correspond to his lost sales because Omura sold his ice cream for as much as $5 a cone and his customers would buy other products such as soda and cookies.

The court found ARI liable for breach of the agreement by Cho. In determining the amount of Omura's lost profits, however, the court acknowledged its difficulty in arriving at an appropriate sum because of the lack of any evidence of Omura's costs. The court stated that:

> The Court is also aware that *we do not award damages in gross[,] the costs which would have been spent by ... [Omura] in obtaining the profits ... are not costs which are awarded.*
>
> . . . .
>
> *Taking into account the varying amount of cost, which this Court doesn't have,* the influence of the decline in the economy, which nobody can [readily] provide in a quantitative manner, that's something that we are all—of which we are all aware. But it's very hard to put an exact dollar sign on it.
>
> This Court, *admitting that it is, to some extent, arbitrary,* is going to award to [Omura] from [ARI] the sum of $4,000. I am going to award attorney's fees and court costs as well.

(Emphases added.) The court did not enter findings of fact and conclusions of law and the parties apparently did not request that findings and conclusions be filed.

However, when a notice of appeal is filed, the district court is required to "find the facts specially and state separately its conclusions of law thereon." District Court Rules of Civil Procedure Rule 52(c). But findings of fact by the district court are not jurisdic-

tional and the appellate court may proceed "where the record is clear and such findings are unnecessary to a determination of the issues on appeal." *Richards v. Kailua Auto Machine Serv.*, 10 Haw.App. 613, 621, 880 P.2d 1233, 1238 (1994). Having the transcript of the proceedings, the exhibits, closing arguments of counsel and the court's oral ruling, we find the record is sufficiently clear without the necessity of findings for purposes of deciding the issues raised on appeal.

## II.

■ On appeal, ARI does not contest its liability or that Omura had been damaged, but essentially contends that the trial court's award was not supported by any evidence because Omura only submitted "the amount of gross sales of ice cream products lost by his store ... [and thus] totally failed to provide any evidence of lost profits" (emphases omitted). We must agree.

■ "Damages [for lost profits] [cannot] be determined by total gross revenues[.]" *Rainbow Island Prod., Ltd. v. Leong,* 44 Haw. 134, 140, 351 P.2d 1089, 1093 (1960). *See also Chung v. Kaonohi Center Co.,* 62 Haw. 594, 618 P.2d 283 (1980) (damages for future lost profits was future lost net profits). Profits "are to be computed and ascertained by finding the difference between cost and yield. In estimating the cost, the elements of price of materials, interest, expenses of manufacture and sale, and other necessary expenditures, if any, ... are to be taken into ... account...." *Providence Rubber Co. v. Goodyear,* 76 U.S. (Wall.) 788, 804, 19 L.Ed. 566 (1869) (equity case involving patent infringement). Thus, "[d]amages for lost profits are measured by the loss of net profits, meaning net earnings or the excess of returns over expenditures, but not lost gross profits or gross sales revenue." *Graphic Directions, Inc. v. Bush,* 862 P.2d 1020, 1024 (Colo.App.1993). *Accord Greives v. Greenwood,* 550 N.E.2d 334 (Ind.Ct.App.1990); *Ashland Pipeline Co. v. Indiana Bell Tel. Co.,* 505 N.E.2d 483, 490 (Ind.Ct.App.1987); *Aiken Indus., Inc. v. Estate of Wilson,* 477 Pa. 34, 43, 383 A.2d 808, 812, *modified on other grounds,* 482 Pa. 625, 394 A.2d 497

(1978) (quoting *Restatement of Contracts* § 331, Comment (b)); 22 Am.Jur.2d *Damages* § 642, at 704 (2d ed. 1988).

■ In this case, the trial court acknowledged that the proper measure of damages was net profits and attempted to fashion a damage award "taking into account the varying amount of cost[s], which [it didn't] have, [and] the influence of the decline in the economy, which nobody can readily provide in a quantitative manner[.]" Without findings of fact, it is impossible for this court to ascertain how the trial court calculated Omura's costs. However, this does not prevent our disposition of the case. While lost profits do not necessarily have to be determined with mathematical certainty, *Ashland,* 505 N.E.2d at 490, "the extent of loss must be shown with reasonable certainty and cannot be based upon mere speculation or guess." *Azer v. Myers,* 8 Haw.App. 86, 126, 793 P.2d 1189, 1213 (1990). *Accord Ferreira v. Honolulu Star–Bulletin, Ltd.,* 44 Haw. 567, 576, 356 P.2d 651, 656 (1960), *quoted in, Uyemura v. Wick,* 57 Haw. 102, 110–11, 551 P.2d 171, 177 (1976). Here, it is clear that the award was based, at best, on the court's guess as to what Omura's expenses were. As noted by the trial court, the record is devoid of any evidence of Omura's actual expenditures. Because these costs are not of common knowledge, Omura had the burden of proving his costs with competent evidence but failed to do so. We hold that a plaintiff fails to prove lost profits, i.e., net profits, where the plaintiff submits evidence of lost gross sales revenue but neglects to submit any evidence of costs or expenditures related to the gross sales revenue.

■ When the plaintiff has proven injury but has failed to prove the amount of damages, the plaintiff is only entitled to nominal damages. *Id.* at 577, 356 P.2d at 657. Therefore, we are constrained to hold that Omura is entitled only to nominal damages.

## III.

■ We vacate the December 22, 1992 Judgment as to the award of damages and

attorney's fees,[2] affirm it as to the award of costs,[3] and remand the case to the district court for entry of a judgment awarding nomi-

nal damages to Omura and appropriate attorney's fees.

2. The award of attorney's fees was based on the amount of damages.

3. An award of nominal damages supports an award of costs. *Ferreira v. Honolulu Star–Bulletin, Ltd.,* 44 Haw. 567, 580, 356 P.2d 651, 656 (1960).