**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000052
16-JUN-2026
08:01 AM
Dkt. 61 SO**

NO. CAAP-24-0000052

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JESSICA REIMANN, Petitioner-Appellee,
v.
GIO MANTELLI aka Giovanni Mantelli, Respondent-Appellant,
and
KRISTEN SANTOS aka Kristin Santos, Respondent-Appellee

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
NORTH AND SOUTH KONA DIVISION
(CASE NO. 3DSS-23-0000036)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

In this appeal, Respondent-Appellant Gio Mantelli
(**Mantelli**) challenges the district court's grant of a harassment
injunction on grounds that the correct legal standard was not
applied, and that two specific conditions imposed were overly
broad and unreasonable. We affirm.

Mantelli appeals from the December 22, 2023 "Order
Granting Petition for Injunction Against Harassment"

(**Injunction**) filed by the District Court of the Third Circuit (**District Court**).[1]

On appeal, Mantelli raises two points of error, contending the District Court erred by: **(1)** "fail[ing] to apply the relevant legal standards for issuing a harassment injunction under Hawaii law, particularly whether or not [Mantelli]'s actions served no legitimate purpose and whether such conduct would cause a reasonable person to suffer emotional distress";[2] and **(2)** "ordering [an] injunction that is overly broad and which imposed unreasonable restrictions" on Mantelli's "lawful use of his own property."

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced in the Opening Brief,[3] we resolve the contentions as follows.

Reimann's January 18, 2023, "Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment" (**TRO Petition**) alleged that her neighbors, Mantelli and Kristen Santos (**Santos**), were illegally operating a food truck business without a permit; and that out of Mantelli's entire 14-acre property, Mantelli and Santos chose to locate their business in the acre closest to the parties' property line and Reimann's home. Reimann alleged the constant presence of

---

[1]     The Honorable Kimberly B. Tsuchiya presided.

[2]     Hawaii Revised Statutes (**HRS**) § 604-10.5(a)(2) (2016) defines "[h]arassment" as "[a]n intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and <u>serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress</u>."  (Emphasis added.)

[3]     Petitioner-Appellee Jessica Reimann (**Reimann**) did not file an Answering Brief.

food truck customers affected her health and privacy. Reimann alleged that on or about Christmas of 2022, Reimann's husband Jarred Yates (**Yates**) informed Mantelli and Santos that the food truck was "highly disruptive" and requested they stop operations; but Santos refused. Reimann described how the "harassment and stalking" then commenced on January 14, 2023, with multiple daily incidents until January 18, 2023, the date the TRO was issued. These incidents consisted generally of Mantelli and Santos walking their dogs "up and down the property line," causing Reimann's own dogs to bark; "blasting music" from their truck; and initiating a construction project near the property line, to "make animal shelters and start a petting zoo next to [Reimann's] house." Reimann alleged that on January 17, 2023, when Yates went to inform Mantelli again about how his family did not feel safe in their home, Mantelli stated:

> I am going to use all my resources, all of the money that I have earned over my life and put that towards making you and your family's life hell! Everyday I will come down by your house and make you not want to live in your home. This will happen all day, every day. It will not stop!

A trial on the TRO Petition was held on February 22, June 30, December 15, and December 22, 2023. Reimann, Yates, Mantelli, and Santos testified. Their testimonies related to the parties' conflicts regarding Mantelli's operation of the food truck on Mantelli's property; Mantelli's construction of an animal feeding structure on the property line during the January 2023 time frame of the Petition; and Mantelli and Santos walking their dogs at the property line.

In its December 22, 2023 ruling, the District Court found certain aspects of Mantelli's testimony not credible, made oral factual findings, and granted the harassment injunction, as follows:

Mr. Mantelli -- let's see. [Yates] testified he had a conversation with Mr. Mantelli. Mr. Mantelli advised [Yates] that . . . this is my land. I can do whatever I want. I'm not going to stop.

[Mantelli] told Mr. Yates he would build an animal structure with the pallets. That he would never consider moving the food truck. If he had to stop operating the food truck there were any number of businesses he could create and make sure the public would always be near Mr. Yates' property. And he specifically said a petting zoo in the area of the property line was an option.

Mr. Mantelli told Mr. Yates that he would not stop. That Mr. Yates was never going to be happy with his family at that property.

That he would use all of his resources and all of the money he earned in his lifetime so that the petitioner's, ah, husband and his family were not happy at their property and they could not thrive. And if Mr. Yates didn't like it, he better move.

. . . .

Also testimony from [Mantelli] that was not credible, he testified initially that he had his property for five years and he planned on having penned animals at the shared fence line. And his purpose was to have a sheep farm.

And then after additional questioning he testified that after the food truck was shut down he was deciding what kind of farm to do and he did research and he learned that you can not put pig pens up next to a house. Thought about it. Did some research. Pig pens need to be 300 feet away. He had looked it up.

And so because he could not do pigs he decided on sheep. And this was after the food truck was shut down. Which according to the testimony was in January of 2022 [sic].[4]

Find that Mr. Mantelli's testimony is not credible.

. . . .

[Mantelli] testified that he had two sheep. I believe he got additional sheep in January of 2023. But for about a year and a half before then he had two sheep.

In the two years he had these sheep before the food truck shut down he fed them in the same spot next to the

---

[4]   The Petition allegations and the trial dealt with alleged incidents in January 2023, not 2022.

barn that was next to his residence. He fed them next to the container to keep them undercover.

It was only after the food truck shut down that he built a structure for feeding the sheep in proximity of [Reimann]'s fence line and the portion of the fence line that is visible from [Reimann]'s home.

And again, the fence line is very long. He testified he put his shelter there because it was shaded, their tree. But if you look at the exhibits, 13, 14, 15, there are trees in other areas. There are shaded portions of the property. Even along that fence line further away from [Reimann]'s home there are shaded and, ah, areas with trees.

. . . .

And there's other behavior about, um -- well, creating a situation where the animals would be directed, and he feeds them twice a day, to this location in proximity of the very small home of 900 square feet occupied by [Reimann] wherein he -- ah, [Mantelli and Santos] have 14 acres upon which to house, feed, shelter their animals.

To direct all this activity to that one location for a week and nothing had happened in that area for the four years before or the one year before, but suddenly in this week almost every day something is happening.

State of mind is something that can be deduced from circul -- circumstantial evidence. And in this case what it appears is that [Mantelli and Santos] were acting, specifically after they had been advised by [Reimann] and [Reimann]'s husband of the adverse effect [sic] activity in proximity to the fence have on [Reimann]'s family, [Mantelli and Santos] decided to focus their attention in that very small area.

I'm going to grant the request for petition -- ah, an injunction.

(Emphases added.) In granting the maximum three-year injunction allowed under HRS § 604-10.5, the District Court found "that the testimony of Ms. Reimann, [and] Mr. Yates" was "credible" and "the allegations of the [TRO] [P]etition proven by clear and convincing evidence[.]"

In addition to the three-year harassment injunction prohibiting Mantelli from contacting, threatening, or physically

5

harassing Reimann, the District Court considered Reimann's request for the imposition of additional special conditions to address the "dog walking on that section of the shared fence line, feeding animals on the shared section of the fenced line, and playing loud music and other activities[.]" Mantelli opposed the requested special conditions citing various reasons. The District Court ordered the following special conditions: "[Mantelli] shall not feed his livestock or animals within 100 yards of the shared property line between [Mantelli] and [Reimann]'s parcels. [Mantelli] shall relocate by Jan[uary] 2, 2024 any structures (not including fencing) from the area within 100 yards of the shared property line."

Mantelli timely appealed.

**(1)** Mantelli contends the District Court "made no determination of whether [Mantelli]'s actions served a legitimate purpose or whether a reasonable person would have suffered substantial emotional distress[,]" which is necessary before "a court may grant an injunction against harassment." Mantelli argues that his testimony revealed that the "feeding of livestock near the property line was part of his agricultural practices, a legitimate purpose that should have been considered"; and that because Reimann described herself as "someone who had a trauma that makes having [her] privacy taken away . . . particularly disturbing[,]" her emotional distress was "significantly influenced" by subjective factors.

Under HRS § 604-10.5(a)(2) and (g) (2016 & 2021 Supp.), the District Court "shall" grant a harassment injunction if "the court finds by clear and convincing evidence" that the respondent engaged in "[a]n intentional or knowing course of conduct directed at [the petitioner] that seriously alarms or disturbs consistently or continually bothers the [petitioner]

6

and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress."

The record reflects the District Court did not enter findings of fact and conclusions of law (**FOFs/COLs**), but it was not required to do so because no party had requested them. See District Court Rules of Civil Procedure (**DCRCP**) Rule 52(a) ("Unless findings are requested, the court shall not be required to make findings of fact and conclusions of law."). Under DCRCP Rule 52(c),[5] however, once the notice of appeal was filed, it appears such FOFs/COLs should have been entered. Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 10(f) requires that in such situations "where the court appealed from is not required to enter" FOFs/COLs prior to judgment, "but is required to do so once a notice of appeal is filed, the appellant shall, no later than 10 days after filing the notice of appeal, file in the court appealed from" such request for entry of FOFs/COLs. Mantelli did not file a request with the District Court for entry of FOFs/COLs. In these circumstances, the appellate court "may" still proceed with its review where "the record is sufficiently clear without the necessity of findings for purposes of deciding the issues raised on appeal." Omura v. Am. River Invs., 78 Hawai'i 416, 417-18, 894 P.2d 113, 114-15 (App. 1995) (citation omitted). In Omura, this court found the record of the transcript, exhibits, closing arguments of counsel and the district court's oral ruling sufficient to decide the appeal without findings. Id. at 418, 894 P.2d at 115. We similarly

---

[5]      DCRCP Rule 52(c) provides: "Whenever a notice of appeal is filed and findings of fact and conclusions of law have not been made, unless such findings and conclusions are unnecessary as provided by subdivision (a) of this rule, the court shall" make such findings and conclusions.

conclude that the record before us is sufficiently clear for us to proceed with appellate review. See id.

Here, the District Court found Reimann and Yates "credible[,]" Mantelli's testimony "not credible[,]" and "the allegations of the petition proven by clear and convincing evidence[.]"  The TRO Petition contained Mantelli's statement that he would "use all [his] resources" "towards making [Yates] and [Yates'] family's life hell" so they would "not want to live in [their] home"; and that Mantelli would do so "all day, every day" and "[i]t will not stop!"  The District Court made oral factual findings, which included that "the purpose for Ms. Santos being in that area [of the property line] for these periods of time was to upset or antagonize the dogs and thus her neighbors[,]" and that Mantelli had told Yates he would "make sure the public would always be near Mr. Yates' property" and that Yates "w[ould] never . . . be happy with his family at that property."  Mantelli does not challenge these findings, which are binding on appeal. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).

We conclude that the District Court's unchallenged findings reflect that Mantelli's and Santos's conduct at the shared property line was intended to seriously alarm and continually disturb Reimann and her family; and such conduct, which included Mantelli's threat to continue such conduct "all day, every day" and "not stop" in order to make "life hell" for Reimann and her family -- would cause a reasonable person to suffer emotional distress, consistent with HRS § 605-10.5(a)(2). There was substantial evidence to support the harassment injunction, and the issuance of the injunction was not clearly erroneous. See Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999).

**(2)** Mantelli argues the District Court reversibly erred by issuing an injunction that is "overbroad and not narrowly tailored to address the alleged harassment," and "imposes unreasonable restrictions that unduly interfere with [Mantelli's] lawful use of his own property."

Mantelli purports that "[u]nder Hawaii law, an injunction must be narrowly tailored to address the specific conduct that constitutes harassment, without unnecessarily infringing on the lawful use of property[,]" but cites no Hawaiʻi authority in support of this proposition. Mantelli does cite two federal cases but presents no argument as to what these cases stand for or explain how they support his position. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

Mantelli claims the injunction's 100-yards-from-the-shared-property-line animal feeding prohibition "is not justified by the evidence presented[,]" and argues that "[t]estimonies, including those given on June 30, 2023, and December 15, 2023, indicate that feeding livestock is a routine and legitimate agricultural activity that serves a lawful purpose." Mantelli, however, provides no description of such "[t]estimonies" or record references for where such testimony can be found in the lengthy transcripts to which he refers.[6] See HRAP Rule 28(b)(7) (requiring argument to contain citations to the record relied on). Mantelli's assertion that "[t]here was no evidence provided that the mere presence of these structures, which likely serve agricultural or other lawful purposes, directly contributed to any alleged harassment" is wholly contradicted by the District Court's binding findings set forth

---

[6] The transcripts for the morning and afternoon June 30, 2023 sessions are 104 pages and 76 pages long. The transcripts for the morning and afternoon December 15, 2023 sessions are 132 pages and 119 pages long.

supra, that Mantelli's construction and use of the animal feeding structure at the shared property line constituted harassment. The District Court found that Mantelli deliberately created the situation where the animals would be fed in the "very small area" "in proximity" to the Reimann's home, even though Mantelli had "14 acres upon which to house, feed, shelter [his] animals" and "nothing had happened in that area" previously.

Mantelli argues that the harassment injunction's order to relocate any structure within 100 yards of the shared property line is "overly broad and unnecessary[,]" and the District Court "should have considered less restrictive means to address [Reimann]'s concerns, such as limiting the types of activities allowed near the property line, rather than imposing a blanket prohibition on structures." By "requiring the removal of structures," Mantelli argues, "the injunction effectively diminishes the functionality and economic value of the property."

This argument mischaracterizes the special condition. It is not a "blanket prohibition on structures" but specifically requires the **_relocation_** of the existing animal feeding structure that the District Court determined to constitute harassment. The District Court's finding that it was not "unreasonable" for the animal feeding structure to be moved "some place else on his 14 acres to feed those sheep that's not right next to [Reimann]'s house[,]" was supported by substantial evidence, because the feeding station had previously been located on a different site "for two years" and was "moved to an area in close proximity to [Reimann]'s house" only "suddenly in January [2023]." Mantelli does not explain how the relocation of the existing animal feeding structure "diminishes the functionality

10

and economic value" of his property, which consists of 14 acres. See HRAP Rule 28(b)(7).

We conclude there was substantial evidence to support the imposition of the two special conditions of the harassment injunction prohibiting animal feeding and requiring removal of the existing feeding structure at the parties' shared property line; and the findings that supported the District Court's conclusion that the imposition of these special conditions was necessary under the circumstances here to address the specific conduct constituting harassment were not clearly erroneous. See Bailey, 92 Hawai'i at 316 n.6, 990 P.2d at 1198 n.6.

For the foregoing reasons, the District Court's December 22, 2023 Injunction is affirmed.

DATED:  Honolulu, Hawai'i, June 16, 2026.

On the briefs:

Edward J. Fetzer,
for Respondent-Appellant.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge